UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID J. FINE, in his capacity as Court-Appointed Ancillary Receiver of Bradford C. Bleidt and Allocation Plus Asset Management Company, Inc. and NANCY LOMBARD, LANGDON F. LOMBARD, DONNA BRANDT LAWRENCE and BESSIE PANOS, individually and on behalf of a class of persons and entities similarly situated,<br><br>               Plaintiffs<br><br>v.<br><br>SOVEREIGN BANK,<br><br>               Defendant. | C.A. No. 06-11450(NG) |

**MEMORANDUM IN SUPPORT OF SOVEREIGN BANK'S MOTION
FOR SUMMARY JUDGMENT AS TO ALL CLAIMS
BY THE ANCILLARY RECEIVER**

Patrick T. Voke, BBO #553033
Paul G. Boylan, BBO #052320
Daniel J. Blake, BBO #552922
LECLAIRRYAN, A Professional Corporation
One International Place, 11th Floor
Boston, MA  02110
(617) 502-8200
Patrick.Voke@leclairryan.com
Paul.Boylan@leclairryan.com
Daniel.Blake@leclairryan.com
      *Counsel for Defendant Sovereign Bank*

CONTENTS

**BACKGROUND AND SUMMARY OF ARGUMENT**……………………………………1

**SUMMARY JUDGMENT STANDARD**…………………………………………………....3

**BACKGROUND AND SUMMARY OF ARGUMENT**…………………………………4

**ARGUMENT**………………………………………………………………………………4

    **I.**     **Sovereign Is Entitled To Summary Judgment On Count I—**
        **APAM's Aiding And Abetting claim—Because APAM Cannot**
        **Establish That sovereign Knew Of Or Actively Participated In Bleidt's**
        **Alleged Breach Of Fiduciary Duty To APAM**……………..…………….4

        A. A plaintiff asserting an aiding and abetting claim must, at a
            Minimum, establish that the defendant knew of the breach
            Of duty and actively participated in it…………………………………5

        B. APAM cannot adduce facts sufficient to support its aiding and
            Abetting claim…………………………………………………………….7

    **II.**     **Sovereign Is Entitled To Summary Judgment On Count II—**
        **APAM's Claim Under M.G.L. c. 106, § 3-307**…………………………...10

        A. Count II fails to state a claim because UCC § 3-307 does not
            Support any independent cause of action………………………………..11
        B. Even if UCC § 3-307 supported a free-standing cause of action—
            And it does not—APAM would lack standing to assert it…………........12
        C. APAM cannot satisfy the requirements of UCC s 3-
            307…………………………………………………………..……………12
            1. UCC § 3-307 does not apply at all because there is no
                Evidence that the Sovereign employees who processed the checks
                were aware of Bleidt's or APAM's fiduciary status
                as to the
                investors……………………………………………………........13

            2. Section 3-307(b)(2)(iii) does not apply because the
                Checks in question were not made payable to the
                Investors or to APAM in its fiduciary capacity……………..........15

    **III.**     **Sovereign Is Entitled To Summary Judgment On Count III and**
        **Count IV—APAM's Negligence Claims**………………………………..17
            A. Under Massachusetts law, a bank owes on duty of care to
             Its customers………………………………………………………18
            B. The economic loss rule bars APAM's claims………………….21

C. APAM has not alleged facts showing that it was damaged
By the allegedly diminished SEC supervision of AMA..........21

IV.    **Count V Fails To State Any Claim Under Chapter 93A.......................22**

V.    **Other Dfenses...........................................................................24**
A.    APAM  Is Barred By <u>In</u> <u>Pari</u> <u>Delicto</u>…    ....................................25

No Exception Applies......    ...........................................27

(i)  No Adverse Interest Exists … …………………………….......27

(ii)  No Innocent Actor Exception Applies………………………….30

(iii)  No Public Interest Exception Applies………………………….31

(iv)  All Leading Cases Support <u>In</u> <u>Pari</u> <u>Delicto</u> Here………………31

(v) No Fact Or Other Valid Argument Bars The <u>In</u> <u>Pari</u> <u>Delicto</u>
Defense………………………………………………………………35

B.    **Sole Causatoin Bars All APAM Claims…………………………..37**

C.    **APAM Is Barred By Sole Causation…………………………….37**

D.    **APAM Is Barred Because It Suffered And Can Prove No
Compensable Losses…………………………………………....38**

**CONCLUSION……………………………………………………………... 38**

**REQUEST FOR ORAL ARGUMENT………………………………………..38**

## BACKGROUND AND SUMMARY OF ARGUMENT[1]

This case arises out of a Ponzi scheme perpetrated by Bradford Bleidt ("Bleidt") and his corporation, APAM Allocation Plus Asset Management Inc. ("APAM"), over a period of approximately 20 years. Sovereign Undisputed Facts, ¶¶ 6, 12, 14, 15, 21, 24. Bleidt's clients entrusted him with money to invest, but he illegally used it for other purposes. Id. Bleidt confessed to stealing millions of dollars in this scheme. Id., ¶ 21. This Court sentenced him to 135 months in prison, and it ordered him and APAM to pay, jointly and severally, restitution and interest of $41,231,746.05. Id., ¶¶ 21, 24. As is the nature of Ponzi schemes, however, most of the investors' money was gone by the time the fraud was revealed. So Bleidt's victims have had to look elsewhere in an attempt to recoup their losses—mostly to banks.

To help collect assets of APAM and Bleidt from which the defrauded investors could recover their restitution award, this Court appointed David J. Fine as Ancillary Receiver. His mandate is to prosecute possible claims on behalf of Bleidt and APAM against banks. In the present case, Fine has brought claims on behalf of APAM against Sovereign Bank ("Sovereign"), where APAM and Bleidt maintained an account through which much of the money in question flowed.[2] The present memorandum addresses those claims.[3]

---

[1] The facts of this case are set forth in Sovereign's Undisputed Facts filed herewith and elsewhere in the record, e.g., in Sovereign's Opposition to Plaintiffs' Motion for Partial Summary Judgment (dated March 13, 2008, docket entry 156). Sovereign will not repeat them here, but will highlight the relevant facts within the body of its argument.

[2] The Ancillary Receiver is not attempting to assert any causes of action possessed by Bradford Bleidt.

[3] These are Counts I through V in the Amended Complaint. A separate memorandum being filed contemporaneously herewith addresses the claims brought by the investors, Counts VI through XI.

The gist of APAM's[4] claims is that Sovereign did not monitor one of APAM's accounts closely enough and, accordingly, enabled APAM and Bleidt to cheat investors out of their money. In other words, APAM—which has been ordered to pay over $41 million for its wrongdoing—is attempting to hold Sovereign liable for not doing enough to prevent it, APAM, from defrauding investors.[5] An odd sort of claim. And, in fact, none of APAM's theories of relief holds water.

Count I asserts that Sovereign "aided and abetted" Bleidt's breaches of fiduciary duty. This claim fails because APAM has not shown—and cannot show—that Sovereign was aware of any such breaches or intended to assist Bleidt in committing such breaches.

Count II invokes UCC § 3-307 in an attempt to establish that Sovereign had notice of APAM's and Bleidt's wrongdoing. This claim fails because: (1) UCC § 3-307 does not afford a free-standing cause of action; (2) APAM cannot show that the bank employees who processed the checks in question actually knew of APAM's fiduciary status or knew that APAM was breaching its fiduciary duties; and (3) the checks deposited in APAM's account were made out to APAM personally, not to any of the investors.

Counts III and IV purport to assert negligence claims. The relationship between Sovereign and APAM, however, was a relationship of debtor and creditor. Sovereign did not owe any tort duty of care to APAM. APAM's attempts to manufacture such a duty out of SEC regulations fails as a matter of law. The claims likewise fall afoul of Massachusetts's economic-loss rule. They are negligence claims seeking damages for purely economic losses, which is

---

[4] Because the claims belong to APAM, but are asserted by the Ancillary Receiver, Sovereign will refer to them throughout this brief as APAM's claims.

[5] This raises the *in pari delicto* defense and other defenses, which are addressed below.

forbidden.  Finally, any damages suffered by APAM from the alleged negligence is purely speculative.

Count V is a claim under M.G.L. c. 93A ("Chapter 93A").  It asserts that Sovereign's conduct assisted Bleidt in perpetrating his fraudulent scheme.  To the extent it alleges aiding and abetting by Sovereign, it fails for the same reasons as Count I.  To the extent it alleges negligence, it fails because Chapter 93A does not apply to negligence claims.  Count V also asserts that Sovereign delayed responding to certain discovery requests made by the ancillary receiver.  This claim fails because litigation misconduct is not the proper subject of a Chapter 93A claim.

There is no question that APAM's and Bleidt's actions were execrable.  The investors' loss of their investments is certainly a tragedy.  But no form of legal alchemy can translate these facts into a viable cause of action by the wrongdoer, APAM, against Sovereign.  Accordingly, this Court should grant Sovereign summary judgment on Counts I through V.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. United States DOJ, 355 F.3d 6, 19 (1st Cir. 2004).  "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

Under both federal Rule 56(e) and District of Massachusetts local Rule 56.1, once the moving party avers the absence of genuine issues of material fact, the "party opposing summary judgment must refer to specific parts of the record to raise a genuine issue of material fact." <u>SEC v. Ficken</u>, 2008 U.S. App. LEXIS 21830, *16 (1st Cir. October 20, 2008). "[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." <u>Ingram v. Brink's, Inc.</u>, 414 F.3d 222, 228-229 (1st Cir. 2005). <u>See</u> <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) ("not every discrepancy in the proof is enough to forestall a properly supported motion for summary judgment; the disagreement must relate to some genuine issue of material fact"). "[S]ummary judgment can be entered even where ambiguous, often murky concepts such as motive and intent are involved . . . ." <u>Ingram</u>, 414 F.3d at 229. <u>See</u> <u>Stuto v. Corning Glass Works</u>, 1990 U.S. Dist. LEXIS 9320, *14 (July 23, 1990) (summary judgment granted on breach of express warranty claim where there was no genuine issue of material fact as to plaintiff's <u>actual knowledge</u> of the falsity of the warranty).

<u>ARGUMENT</u>

**I.      Sovereign Is Entitled To Summary Judgment On Count I—APAM's Aiding-and-Abetting Claim—Because APAM Cannot Establish That Sovereign Knew of or Actively Participated In Bleidt's Alleged Breach of Fiduciary Duty to APAM.**

Count I of the Amended Complaint asserts a claim for "aiding and abetting breach of fiduciary duty." Pertinent here, it alleges that "Sovereign Bank was well aware of the fiduciary duty owed by Bleidt to APAM." (Am. Compl. ¶ 37A).[6] And it further claims that "Sovereign Bank" acted in such a way as to assist substantially, and to aid and abet, Bleidt's . . . violation of

---

[6] APAM only has standing to assert an aiding-and-abetting claim based on the alleged breaches of duty that Bleidt owed to it. Only the investor plaintiffs can assert aiding-and-abetting claims based on the breaches of duty that APAM and Bleidt owed to them. Those claims are addressed in the separate memorandum of law directed to the investor claims, being filed contemporaneously herewith.

[his] fiduciary duties." This aiding-and-abetting claim fails as a matter of law because discovery

has shown that (1) Bleidt—the sole officer, director, and, shareholder of APAM—was one and

the same as APAM and, as such, could not have breached any fiduciary duty owed to it, (2) there

is no evidence that Sovereign knew of any such breach by Bleidt, and (3) Sovereign's alleged

inaction cannot, as a matter of law, constitute the sort of "active participation" needed for an

aiding-and-abetting claim.

> **A.    A plaintiff asserting an aiding-and-abetting claim must, at a minimum, establish that the defendant knew of the breach of duty and actively participated in it.**

In <u>Arcidi v. NAGE, Inc.</u>, the Supreme Judicial Court of Massachusetts recited the

elements of a cause of action for aiding and abetting a breach of fiduciary duty:

> The elements of the tort of aiding and abetting a fiduciary breach are: (1) there must be a breach of fiduciary duty, (2) the defendant must know of the breach, and (3) the defendant must actively participate or substantially assist in or encourage the breach to the degree that he or she could not reasonably be held to have acted in good faith.

447 Mass. 616, 623-24, 856 N.E.2d 167, 174 (2006). <u>See also</u> <u>Spinner v. Nutt</u>, 417 Mass. 549,

556, 631 N.E.2d 542, 546 (1994); RESTATEMENT (SECOND) OF TORTS § 876(b) (For harm

resulting to a third person from the tortious conduct of another, one is subject to liability if he . . .

knows that the other's conduct constitutes a breach of duty and gives substantial assistance or

encouragement to the other . . . .").

A plaintiff cannot prevail in an aiding-and-abetting claim merely by showing that the

defendant negligently allowed bad things to happen. With respect to the knowledge prong, for

example, Massachusetts law requires the plaintiff to show that the defendant was *actually aware*

*that it was playing a substantial role in the unlawful enterprise*:

> Massachusetts courts have made clear that a defendant 'aids and abets" a tortfeasor only if, at the least, the defendant actually

5

> **knows** about "its substantial, supporting role in an unlawful enterprise."

Maruho Co., Ltd. v. Miles, Inc., 13 F.3d 6, 10-11 (1st Cir. 1993) (quoting Kyte v. Philip Morris, Inc., 408 Mass. 162, 168, 556 N.E.2d 1025, 1028 (Mass. 1990) (emphasis in original)).  See also In re: Consolidated Welfare Fund ERISA Litigation (Bailey v. Empire Blue Cross/Blue Shield), 856 F. Supp. 837, 843 (S.D.N.Y. 1994) (quoting § 876 of the RESTATEMENT (SECOND) OF TORTS and requiring actual knowledge that third-party conduct is a breach of fiduciary duty).

Indeed, this Court recently held that a plaintiff can satisfy the knowledge prong only if it shows that the defendant *actually intended to assist the tortfeasor*.  Buckley v. Goldman, Sachs & Co., 2005 U.S. Dist. LEXIS 9626, at *31-38 (D. Mass. 2005).  In Buckley, Judge Stearns dismissed the plaintiff's aiding and abetting claim, holding that more must be alleged than that the purported abettors merely "knew, or should have known" of wrongful conduct.  Id., at *31.  Defendant instead "must have an unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions."  Id.

Likewise, the active-participation prong requires that the defendant "actively participate[d] or substantially assist[ed] in or encourage[d] the breach to the degree that he or she could not reasonably be held to have acted in good faith."  Arcidi, 447 Mass. at 623-24, 856 N.E.2d at 174.  In this context, "substantial assistance" exists only "where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."  Sharp Int'l Corp. v. State St. Bank & Trust Co., 403 F.3d 43, 50 (2d Cir. 2005) (internal quotation marks omitted).

Inaction constitutes substantial assistance only if an "independent duty to act is owed" to the plaintiff.  Dillon v. Militano, 731 F. Supp. 634, 639 (S.D.N.Y. 1990); Stander v. Financial Clearing & Servs. Corp., 730 F. Supp. 1282, 1288 (S.D.N.Y. 1990) (aiding and abetting a

securities law violation). Thus—without some other affirmative duty to act—it is **not** aiding and abetting for a defendant to stand idly by while a wrongdoer breaches a fiduciary duty owed to the plaintiff. "Absent a duty to act," the only action proscribed is not to "affirmatively assist" or to "help conceal fraud by another." Sharp Int'l., 403 F. 3d, at 52. See also Prosser & Keeton on the Law of Torts § 46 at 323-24 (5th ed. 1984) ("Since there is ordinarily no duty to take affirmative steps to interfere, mere presence at the commission of the wrong . . . is not enough to charge one with responsibility.").

In short, for APAM to succeed on Count I in the present case it must show that: (1) Bleidt owed a fiduciary duty to APAM and breached that duty, (2) Sovereign knew of Bleidt's fiduciary duty to APAM and intended to assist Bleidt in breaching his fiduciary duty to APAM, and (3) Sovereign either affirmatively assisted Bleidt in breaching his fiduciary duty to APAM or had an independent duty to act to prevent Bleidt's breach of fiduciary duty to APAM.

### B.     APAM cannot adduce facts sufficient to support its aiding and abetting claim.

APAM's aiding and abetting claim fails on all three scores.

To begin, APAM cannot make the threshold showing that Bleidt violated any fiduciary duty that he owed to APAM. Bleidt was the sole officer, director, and shareholder of APAM. (SEC v. Bleidt, et al., Civil Action No. 04-12415-NG, Order Re: SEC First Application For Counsel Fees And Expenses, January 27, 2006, p. 1). So every constituency of APAM— management and ownership alike—was aware of and participated in all of Bleidt's misconduct. (Sovereign Facts, ¶¶ 3, 18). On this record, Bleidt and APAM are identical: "I was APAM . . . [We were] one and the same." (Sovereign Facts, ¶ 3). It is logically impossible for Bleidt to have violated a duty that he owed to himself. Accordingly, APAM cannot establish that there was a breach of Bleidt's fiduciary duty to APAM.

APAM also cannot satisfy the knowledge element of an aiding-and-abetting claim. There is no evidence—and will be no evidence—that any Sovereign employee ever had actual knowledge of a violation of fiduciary duty by Bleidt or APAM. (Sovereign Facts, ¶¶ 22, 28) (Bleidt denying Sovereign or anyone at Sovereign knew or had reason to suspect his thefts). At most, Plaintiffs can show that Sovereign *could* have learned of Bleidt's thefts if it had investigated the matter. But merely having the opportunity to possibly acquire knowledge about a breach of fiduciary duty is not the same as having actual knowledge of such a breach. Cahaly v. Benistar, 451 Mass. 343, 355 (2008) ("Constructive knowledge is not actual knowledge."). So the mere existence of so-called "red flags," (Amended Complaint, ¶ 24) does not, and cannot, establish actual knowledge by Sovereign of breach of fiduciary duty by APAM..[7]

Given that there is no evidence that Sovereign was even aware of Bleidt's alleged breaches of duty to APAM, it follows *a fortiori* that Sovereign had no knowledge of the role—if any—that it played in such breaches. Maruho, 13 F. 3d at 10-11. And it certainly follows that Sovereign did not intend to assist the tortfeasor. Buckley, 2005 U.S. Dist. LEXIS 9626, at *31. For all these reasons, APAM cannot satisfy the knowledge prong of its aiding-and-abetting claim.

Finally, APAM cannot establish that Sovereign participated in or substantially assisted Bleidt's breach of fiduciary duty to APAM. The gist of APAM's argument is that Sovereign enabled Bleidt's breach of fiduciary duty by failing to investigate and "detect" possible wrongdoing. It alleges assistance by inaction. APAM fails to identify a single positive action

---

[7] Filler v. Hanvit Bank, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004) ("Constructive knowledge of the primary fraud—the possession of information that would cause a person exercising reasonable care and diligence to become aware of the fraud—**is not sufficient** to support an aiding and abetting claim.") (emphasis added), *aff'd.*, No. 04-6295-cv, 2005 U.S. App. LEXIS 26443 (2d Cir. Dec. 2, 2005). VTech Holding Ltd. v. Pricewaterhouse Coopers, LLP, 348 F. Supp. 2d 255, 270 (S.D.N.Y. 2004) (mere allegation that a bank knew of "red flags" was not enough to satisfy the requirement of actual knowledge of violation of fiduciary duty).

taken by Sovereign that furthered Bleidt's violations of any fiduciary duty.  APAM alleges only that Sovereign failed to detect or stop Bleidt's fraud.

The problem with this argument is that—absent a fiduciary relationship between the plaintiff and the defendant—Massachusetts law does not impose any affirmative obligation to determine whether the third-party wrongdoer was himself breaching duties to the plaintiff. Arcidi., 447 Mass. at 623, 856 N.E.2d at 174.  "Inaction, or a failure to investigate, constitutes actionable participation **only** when a defendant [i.e., Sovereign] owes a fiduciary duty directly to the plaintiff; that the primary violator [i.e., Bleidt] owes a fiduciary duty to the plaintiff [i.e., APAM] is not enough."  Kolbeck v. LIT Am. Inc., 939 F. Supp. 240, 247 (S.D.N.Y. 1996) (emphasis added) (cited in Arcidi, 447 Mass. at 623, 856 N.E.2d at 174).

Sovereign did not owe a fiduciary duty to APAM, its customer.  Flaherty v. Baybank Merrimack Valley, N.A., 808 F. Supp. 55, 64 (D. Mass. 1992) (bank's relationship to customer is one of creditor and debtor, "a relationship which imposes no duty to counsel or to make disclosures to the customer"); Capizzi v. FDIC, No. 90- 12775, 1993 U.S. Dist. LEXIS 19446, at *30 (D. Mass. March 9, 1993) ("Massachusetts courts have viewed a bank's relationship to its customers simply as one of creditor and debtor, 'a relationship not giving rise to fiduciary obligations.'") (citing Flaherty).  See also Sharp Int'l., 403 F.3d at 52 (legal relationship between a borrower and a bank is contractual, one of debtor and creditor, and does not create a fiduciary relationship).

Thus, even assuming that Bleidt breached a fiduciary duty to APAM (and he did **not**), and even assuming that Sovereign had reason to be suspicious of Bleidt or APAM (and it did **not**), that still is insufficient to establish that Sovereign substantially assisted Bleidt in breaching his fiduciary duty to APAM.  Sharp Int'l., 403 F.3d at 52 (bank not liable for silence to creditors

9

despite actual knowledge that its customer was "rife with fraud" and actual knowledge that others would be "likely victims" of the fraud).

Lerner v. Fleet Bank. N.A., 459 F.3d 273 (2d Cir. 2006), previously relied on by the Ancillary Receiver, is distinguishable. Lerner involved an attorney's fiduciary-trust accounts—accounts that were subject to unique supervisory requirements accepted by and known to the defendant bank. Indeed, Lerner states that a bank "generally has **no** duty to monitor" non-fiduciary accounts and that, even as to those, it has no duty to safeguard funds in those accounts from fiduciary misappropriation after lawful deposits. Id. at 294 (citation omitted). Unlike the defendant in Lerner, APAM never had any fiduciary account at Sovereign. (Sovereign Facts ¶ 10, 12, 13). Thus, properly read, Lerner exonerates Sovereign.

## II.    Sovereign is Entitled to Summary Judgment on Count II—APAM's Claim Under M.G.L. c. 106, § 3-307.

In Count II, APAM asserts that Sovereign violated M.G.L. c. 106, § 3-307 (Massachusetts' version of UCC § 3-307) and that it therefore is entitled to relief.[8] This claim fails for several independently sufficient reasons.

---

[8] M.G.L. c. 106 § 3-307 reads as follows:

(a) In this section:

    (1)    "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

    (2)    "Represented Person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.

(b)    If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

    (1)    Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.

    (2)    In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security

*(note continued on following page . . .)*

### A.     Count II fails to state a claim because UCC § 3-307 does not support any independent cause of action.

Most conspicuously, Count II fails because UCC § 3-307 does not support a free-standing cause of action.  The exact legal basis for APAM's claim is obscure.  UCC § 3-307 is part of the law of negotiable instruments.[9]  Under the UCC, a person taking an instrument is subject to claims to that instrument or its proceeds unless the taker is a "holder in due course."  But a person can be a "holder in due course" only if he accepts the instrument without notice of those claims.  The purpose of UCC § 3-307 is to define certain circumstances in which a taker of an instrument is deemed—for purposes of Article 3—to have notice of a breach of fiduciary duty by the person presenting the instrument.  See M.G.L. c. 106, § 3-307, *comment 2*.  It delineates an exception to the holder-in-due-course rule.  In short, UCC § 3-307 is an exception to a defense to a negotiable-instruments claim.

As an exception to a defense, UCC § 3-307 does not by itself support a cause of action.  See 2 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 19-5, at 275 (4th ed. 1995) (stating that UCC § 3-307 "denies holder in due course status to the taker [but] does not confer an affirmative cause of action . . . .").  APAM has not asserted a UCC Article 3

---

*(. . . note continued from previous page)*

        for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or on account of the represented person.

    (3)     If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.

    (4)     If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited into an account other than the fiduciary, as such, or an account of the represented person.

11

negotiable-instruments claim against Sovereign (e.g., a claim asserting rights to the instrument or its proceeds under UCC § 3-306, M.G.L. c. 106, § 3-306).[10]  So § 3-307 is irrelevant to this case. Accordingly, Count II fails to state a claim against Sovereign.

> **B.    Even if UCC § 3-307 supported a free-standing cause of action—and it does _not_—APAM would lack standing to assert it.**

Even assuming for the sake of argument that UCC § 3-307 supported an independent cause of action—and it does **not**—Count II still must be dismissed because APAM is not the proper party to assert it.  It suffered no loss in the transactions.  The investor checks were deposited into APAM's business operating account at Sovereign.  (Sovereign Facts, ¶¶ 7, 12, 13).  APAM got the money.  The only persons who conceivably could claim a loss from those transactions are the investor plaintiffs.  Because APAM suffered no legally cognizable injury from the negotiation of the investor checks—indeed, it improperly benefited from them—it lacks standing to bring a negotiable-instruments claim against Sovereign.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 563 (1992) (the "'injury in fact' test requires . . . that the party seeking review be himself among the injured").  Accordingly, Count II should be dismissed as to APAM.

> **C.    APAM cannot satisfy the requirements of UCC § 3-307.**

Finally, even assuming that UCC § 3-307 created a cause of action (and it does **not**), and even assuming that APAM were a proper party to assert such a claim (and it is **not**), Count II

---

*(. . . note continued from previous page)*
[9] Count II also purports to make a claim regarding "all wire transfers."  (Am. Compl. ¶ 43).  But wire transfers are governed by Article 4A of the UCC, not Article 3, so these cannot be the basis for a § 3-307 claim.

[10] This Court (August 8, 2008 Order, p. 3) alternately characterizes Count II as a claim for conversion.  The Amended Complaint does not mention conversion and cannot reasonably be construed to allege it.  But even if it is so construed, it fails because Sovereign is a holder in due course who took the instruments without notice of the claims of the investors.  See infra.

fails because APAM cannot establish the facts needed to satisfy the requirements of UCC § 3-307.

> *1.    UCC § 3-307 does not apply at all because there is no evidence that the Sovereign employees who processed the checks were aware of Bleidt's or APAM's fiduciary status as to the investors.*

As a threshold matter, APAM cannot even establish that the rules set forth in UCC § 3-307 apply to this case.

In order for § 3-307 to apply, the "taker" must have "knowledge" of the fiduciary status of the fiduciary:

> If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) **the *taker* has knowledge of the fiduciary status of the fiduciary**, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply . . .

M.G.L. c. 106 § 3-307(b) (emphasis added).  The "taker" is the bank that processes the check.

Id., *comment 2* ("In most cases, the 'taker' referred to in Section 3-307 will be a bank or other organization.").  The bank's "knowledge" under UCC § 3-307(b) is the knowledge of the individual clerk or teller who actually conducted the transactions in question:

> Knowledge of an organization is determined by the rules stated in Section 1-201(27).  In many cases, the individual who receives and processes an instrument on behalf of the organization that is the taker of the instrument "for payment or collection or for value" is a clerk who has no knowledge of any fiduciary status of the person from whom the instrument is received.  In such cases, Section 3-307 doesn't apply because, under Section 1-201(27), **knowledge of the organization is determined by the knowledge of the "individual conducting that transaction," i.e. the clerk who receives and processes the instrument.**

§ 3-307, Comment 2 (emphasis added).  In other words, a bank's knowledge of a transaction is deemed to be the knowledge of the teller or clerk who conducted the transaction.  So § 3-307

does not apply if the bank teller or clerk is unaware of the fiduciary status of the person tendering the instrument.  Id.  Even the official comments recognize that it is a "relatively uncommon case" for a bank clerk to know those facts.  Id.

Applying those principles in the present case, Section 3-307(b) is relevant only if Sovereign—during the transactions involving the checks in question—knew of Bleidt's/APAM's fiduciary status as to APAM investors.  United Catholic Parish Sch. of Beaver Dam Educ. Ass. v. Card Serv. Center, 636 N.W.2d 206 (Wis. Ct. App. 2001) (Section 3-307 requires that banks have actual knowledge of the fiduciary relationship).  To show this at trial, Plaintiffs need to establish that a specific clerk or teller receiving and processing APAM checks had that actual knowledge.  Mikrut v. First Bank of Oak Park, 832 N.E.2d 376 (Ill. Ct. App. 2005).  UCC Section 3-307, *comment 2*.

There is no evidence that the Sovereign employees who received and processed the checks in question were aware of the fiduciary relationship between APAM and its investor clients.  Sovereign indisputably had no such knowledge.  Sovereign Facts, ¶¶ 22, 23.  Plaintiffs fail to identify any teller who processed any such check, allegedly taken with such knowledge. And they fail to show that any bank teller or bank officer ever had actual knowledge of such fiduciary status.  Indeed the evidence is directly to the contrary.  During the events giving rise to this suit, Sovereign had no knowledge that Bleidt or APAM was a fiduciary.  (Sovereign Facts, ¶¶ 12, 13).  It had no knowledge that any instruments taken from Bleidt or APAM were "from a fiduciary."  (Sovereign Facts, ¶¶ 22, 23).  And it had no knowledge that Bleidt or APAM had "fiduciary status."  Id. § 3-307(a)(1), § 3-307(b)(ii).

Because § 3-307 only applies where there is knowledge of fiduciary status and because APAM cannot adduce sufficient evidence to establish such knowledge on the part of Sovereign, APAM's § 3-307 claim fails as a matter of law.

> 2.    *Section 3-307(b)(2)(iii) does not apply because the checks in question were not made payable to the investors or to APAM in its fiduciary capacity.*

Finally, Plaintiffs cannot satisfy the requirements of the particular subsection they rely on, § 3-307(b)(2)(iii).  Although UCC § 3-307(b)(1)-(4) enumerates several rules for determining when the taker of an instrument does, or does not, have notice of a claim for breach of fiduciary, duty, Plaintiffs rely exclusively on § 3-307(b)(2)(iii).  This section states that the taker has notice of breach of fiduciary duty when checks made payable to the "represented person"[11]—or to the fiduciary as such—are instead deposited into accounts owned by the presenter in his own right:

> In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is . . . (iii) deposited to an account other than the account of the fiduciary, as such, or an account of the represented person.

M.G.L. c. 106 § 3-307(b)(2)(iii).  Suppose, for example, that T is a trustee and B is the beneficiary of the trust.  Suppose further that T, violating his fiduciary duty to B, deposits a check made payable to B into T's own personal account.  Assuming the clerk or teller handing the transaction knows of the fiduciary relationship between T and B, the bank is deemed under this subsection to have notice of T's breach of fiduciary duty to B.  The same rule applies if the check is made payable to "T, as trustee for B."  The idea behind this rule is simple: it is generally improper for a fiduciary to deposit instruments that are made payable to the represented party— or to the "fiduciary as such"—into the fiduciary's own personal accounts.  Id., *comment 2*.

---

[11] That is, the person to whom the presenter of the instrument owes a fiduciary duty.  M.G.L. c. 106 § 3-307(a)(2).

The problem with APAM's claim is that the checks in question were not made payable to the individual investors. Nor were the checks made payable to APAM in its fiduciary capacity (e.g., "APAM, Investment Advisor" or "APAM, as Agent for Investor"). Sovereign Facts, ¶¶ 9, 11, 13. They simply were made payable—either initially or via subsequent endorsement—to "APAM" (Sovereign Facts, ¶ 14). Because the deposited checks were not made payable to the investors or to APAM in its fiduciary capacity, § 3-307(b)(2)(iii) does not apply.

If that were not sufficiently clear, the next subsection, UCC § 3-307(b)(3), specifically addresses cases like the present case where the instruments in question are not made payable to the fiduciary—i.e., "payable to the payee [as an individual] and not a fiduciary." M.G.L. c. 106 § 3-307, *comment 4*. In such circumstances, the bank is not deemed to have notice of the breach of fiduciary duty unless it can be shown that it had *actual knowledge* of the breach:

> If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, **the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty**.

M.G.L. c. 106 § 3-307(b)(2)(iii) (emphasis added).

In <u>Jelmoli Holding, Inc. v. Raymond James Fin. Serv.</u>, 470 F.3d 14, 19 (1st Cir. 2006), the First Circuit—applying Massachusetts law—held that where a check is made payable to the payee as an individual, not a fiduciary, UCC § 3-307 defeats holder-in-due-course status only if the plaintiff can demonstrate that the depository had actual personal knowledge of the breach of duty, "not just warning clues." Reversing the district court, it admonished that "under section 3-307 '[m]isuse of the proceeds by the fiduciary is treated as the responsibility of the represented person, who . . . chose the fiduciary.'" <u>Id.</u> (quoting Miller, Hawkland's Uniform Commercial Code Series § 3-307:5 (West 2006)). <u>See also United States v. Thomas</u>, 315 F.3d 190, 202 (3d Cir. 2002) (holding that a bank cannot be held liable for aiding and abetting a fiduciary's breach

of fiduciary duty when the checks were made out to the fiduciary personally, or to cash, unless the bank actually knew of that breach of duty); <u>Helig Trust & Beneficiaries v. First Interstate Bank of Washington</u>, 969 P.2d 1082, 1084-85 (Wash. Ct. App. 1998) (holding that checks made payable directly to the fiduciary in his individual capacity do not, absent actual knowledge, give the bank notice of a claim for breach of fiduciary duty).

In the present case, there is absolutely no evidence that the "taker"—i.e., Sovereign's tellers and clerks who handled these checks—knew of Bleidt's or APAM's breaches of fiduciary duty. Plaintiffs fail to identify any check taken by any Sovereign employee with actual knowledge of breach of fiduciary duty. Sovereign Facts, ¶¶ 22, 23. They fail to show that any bank teller or bank officer ever had actual knowledge of the fiduciary status of APAM and/or Bleidt or that they were breaching such duty by depositing a check into APAM's account. Because the checks were made payable to—or endorsed over to—APAM in its corporate capacity, and because the Sovereign employees handling these transactions did not have any actual knowledge of the breaches of fiduciary duty, APAM's claims under § 3-307 fail as a matter of law.

*     *     *

To summarize: UCC section 3-307 does not create any independent cause of action, does not apply to any facts alleged or proved, and creates no damages claim against Sovereign by APAM. Accordingly, this Court should grant Sovereign's motion for summary judgment as to Count II.

### III.    Sovereign is Entitled to Summary Judgment on Count III and Count IV—APAM's Negligence Claims.

In Counts III and IV, APAM attempts to shoehorn the facts of this case into a negligence cause of action against Sovereign. This attempt fails because (1) banks do not owe their

17

customers tort duties of care, (2) the economic loss rule bars negligence claims where the alleged injuries are solely economic, and (3) APAM cannot support its damages claim with any competent evidence.

### A.    Under Massachusetts law, a bank owes no duty of care to its customers.

A defendant cannot be liable in negligence absent a threshold duty to exercise care. Gorfinkle v. U.S. Airways, Inc., 431 F.3d 19, 23 (1st Cir. 2005) (applying Massachusetts law); See Magarian v. Hawkins, 321 F.3d 235, 238 (1st Cir. 2003) (applying Massachusetts law).  But as noted above, the relationship between a bank and its customers is that of debtor and creditor, governed by ordinary principles of contract law.  Flaherty, 808 F. Supp. at 64 (bank's relationship to customer is one of creditor and debtor, "a relationship which imposes no duty to counsel or to make disclosures to the customer"); Sharp Int'l., 403 F.3d at 52 (legal relationship between a borrower and a bank is contractual, one of debtor and creditor).   A bank's liability even to a customer requires its actual knowledge of a misappropriation of the customer's funds. Allen v. Fourth Natl. Bank, 224 Mass. 239, 244 (1916); Kendall v. Fidelity Trust Co., 230 Mass. 238, 241-242 (1918); Boston Note Brokerage Co. v. Pilgrim Trust Co., 318 Mass. 224, 227 (1945).  "A banker having no interest in the matter, who pays out money on deposit on the fraudulent order of the person who by the terms of the deposit had the right to draw on the account, is liable only when he is privy to the depositor's fraud."  Newburyport v. First Natl. Bank, 216 Mass. 304, 304-305 (1914); Eastern Mut. Ins. Co. v. Atlantic Natl. Bank, 260 Mass. 484, 488 (1927); Schlicthe v. Granite State Bank, 40 Mass. App. Ct. 179, 181 (1996).   A bank (such as Sovereign) owes no duty of care to noncustomer parties (such as investor plaintiffs) allegedly defrauded by a bank customer or account owner.  Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 227 (4th Cir. 2002)("[A] bank does not owe non-customers a duty of care.").

APAM cannot recover for duties, if any, breached vis-à-vis the investors.  It can only bring suit against Sovereign for duties, if any, that Sovereign owed to APAM and that Sovereign breached.

Seen in that light—the proper light—APAM's negligence claims make no sense whatsoever.  In Count III, APAM asserts that Sovereign breached its duty to "exercise reasonable care with regard to the issue of whether Bleidt, as the agent of APAM, was authorized to make the withdrawals from, draw the checks on, and send the wire transfers of funds out of, the sham APAM account." (Am. Compl. ¶ 48).  And in Count IV, APAM claims that "in the exercise of the duty of due care Sovereign owed to its customer APAM . . . Sovereign Bank should have conducted a reasonable investigation of the transfers." (Am. Compl. ¶ 58A).  In particular, it claims Sovereign should have ensured that APAM and Bleidt were not violating SEC regulations.

These are claims by APAM, which are asserted through its Ancillary Receiver.  It was APAM, acting through its agent Bleidt, who committed the thefts that have given rise to this lawsuit.  Sovereign Facts, ¶¶ 3, 36, 14, 15, 165, 18, 21, 24.  Bleidt was fully authorized to conduct the transactions on behalf of APAM—indeed he was the *sole* person authorized by APAM to conduct such transactions.  (Sovereign Facts, ¶ 1, 3, 7, 18).  He was the sole authorized signatory for APAM.  (Sovereign Facts, ¶¶ 3, 7, 18).  He had full authority to act on APAM's behalf with respect to these accounts.  APAM has no evidence that Bleidt lacked this authority.  Nor does it have any evidence that any Sovereign employee ever knew that Bleidt was *not* authorized to act for APAM.  He was so authorized, and had both actual and apparent authority to transfer funds on behalf of APAM.  (Sovereign Undisputed Facts, ¶¶ 3, 18).  Bleidt was identical to APAM, and vice versa.  (Id., ¶¶ 3, 18).

APAM is claiming that Sovereign breached its alleged duty to police the misconduct of . . . APAM. In essence, it is claiming that a bank has a duty of care to protect its customers from their own criminal activities. APAM has not cited a single case to support this novel legal theory. Nor can it. Because there is no basis for finding a tort duty of care owed by Sovereign to APAM to prevent APAM's own wrongdoing, this Court should grant summary judgment on APAM's negligence claims in Counts III and IV.

Finally, Count IV asserts that Sovereign owed a duty to APAM to ensure that APAM and Bleidt were complying with SEC regulations governing investment advisors. As a matter of law, Sovereign, is *not* charged with any SEC enforcement duties as to investment advisors. Those lie solely within the jurisdiction of the SEC. Sovereign had no duty to enforce SEC regulations nor any duty to somehow maximize the chance of SEC enforcement. Indeed, the presumption is *against* implied rights of action in federal statutes. Stowell v. Ives, 976 F.2d 65, 70, n. 5 (1st Cir. 1992). That presumption "will endure unless the plaintiff proffers adequate evidence of contrary congressional intent." Id. See Colon v. Santander Nat'l. Bank, 4 F. Supp.2d 53, 57 (D.P.R. 1998) (Bank Secrecy Act, 31 U.S.C. 5313, creates no private cause of action).[12]

Even more to the point, it is simply astonishing for APAM to assert—as it does in Count IV of the Amended Complaint—that Sovereign should have been more diligent in helping the SEC discover *APAM's own violations* of federal securities laws. There is no such duty, and even if there were one, APAM is not the right party to assert it. For all these reasons, this Court should dismiss Count IV of the Amended Complaint.

---

[12] Customers of banks, like APAM, are sometimes entitled to enforce distinctive identifiable rights not shared by the general public. See Barnes v. Fleet National Bank, 370 F.3d 164, 176 (1st Cir. 2004) (TISA, 12 U.S.C. 4301, creates actionable violations by bank as to false disclosures to bank customers). That limited exception is not applicable, and shows the overall validity of the rule that bank customers do not gain, as customers, implied rights of action by force of every statutory enactment, no matter how unrelated to banking.

### B.    The economic loss rule bars APAM's claims.

The economic loss rule is a second impediment to APAM's negligence claims.  Under Massachusetts law, this doctrine bars recovery "for economic losses in tort-based . . . negligence cases absent personal injury or physical damage to one's property."  Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305, 613 N.E.2d 92, 93 (1993).  See also Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107, 533 N.E.2d 1350 (1989) ("[I]n this State when economic loss is the only damage claimed, recovery is not allowed . . . in negligence."); Stop & Shop Cos. v. Fisher, 387 Mass. 889, 893-894, 444 N.E.2d 368 (1983) ("[W]e see no reason to apply . . . negligence analysis . . . to Stop & Shop's purely economic harm."); RESTATEMENT (SECOND) OF TORTS, § 766C (1979).

Counts III and IV are tort-based negligence claims.  On these claims, APAM alleges only economic damages.  Accordingly, they are barred by Massachusetts's economic loss rule.

### C.    APAM has not alleged facts showing that it was damaged by the allegedly diminished SEC supervision of APAM.

Counts III and IV are separately subject to summary judgment because APAM cannot show that the alleged negligence of Sovereign caused it any damages.  The premise of each count is that if Sovereign had acted differently, Bleidt's and APAM's wrongdoing would have been discovered sooner by someone.  But APAM cannot show how or when that discovery would have occurred, nor by whom.  And APAM cannot show that it was damaged by Sovereign's alleged breaches of duty.  Indeed, APAM does not allege and cannot establish *any* of the links connecting the alleged negligence to damages to APAM.  In particular, it cannot show:

- Any specific steps by Sovereign not taken which if taken probably would have resulted in any discovery or similar specific action by the SEC against APAM and Bleidt;

- That because Sovereign did not take certain steps, the SEC did not detect wrongdoing by APAM and Bleidt;

- That there was in fact any SEC failure of supervision;

- That this failure of SEC supervision caused APAM any economic damages.

Every step of loss-causation in Counts III and IV is built out of pure conjecture. There is no non-speculative basis to find any probability of detection of Bleidt or APAM misconduct by anyone prior to Bleidt's November 12, 2004 confessions. (Sovereign Facts, ¶¶ 6, 11, 13, 14, 15, 18). (Bleidt and APAM acted alone; no one detected their thefts prior to the confession November 12, 2004 sequence). Because APAM has not, and cannot, show that Sovereign's alleged breaches of duty caused it any losses, this Court should grant summary judgment on APAM's negligence claims.

### IV.   Count V Fails To State Any Claim Under Chapter 93A.

Finally, the Amended Complaint is subject to summary judgment as to Count V, the Chapter 93A claim. APAM's demand letter—incorporated by reference in Count V—sets forth three theories of liability under Chapter 93A:

(i)     Sovereign and predecessor banks failed to discover that Bleidt defrauded APAM or APAM's clients;

(ii)    Sovereign did not properly respond to a subpoena issued by the SEC to Bleidt and APAM, and

(iii)   Sovereign did not timely comply with various informal requests for documentation made by Fine as Ancillary Receiver in this case.

None of these theories is a cognizable basis for Chapter 93A liability.

The first theory is a repackaging of the aiding-and-abetting claim asserted in Count I. For the reasons stated *supra*, Sovereign did not aid or abet APAM's and Bleidt's breaches of fiduciary duty. APAM cannot show that Sovereign was aware of their breaches of fiduciary

22

duty, cannot show that Sovereign intended to assist those breaches of fiduciary duty, and cannot show that Sovereign actively participated in those breaches of fiduciary duty.

To the extent the first theory is an attempt to reassert the negligence claims of Counts III and IV, it fails because a Chapter 93A claim cannot be grounded on mere negligence.  Darviris v. Petros, 442 Mass. 274, 278, 812 N.E.2d 1188, 1192 (2004) (Chapter 93A liability requires more than negligence); Robinson v. Bodoff, 355 F. Supp. 2d 578, 584-85 (D. Mass. 2005). Negligence is "not" inequitable marketplace behavior" within Chapter 93A.  American Tel. & Tel. Co. v. I.M.R. Capital Corp., 888 F. Supp. 221, 256 (D. Mass. 1995).  No Chapter 93A claim lies merely for an alleged failure to discover alleged wrongdoing by others.  James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1251 (1st Cir. 1997).

The other two theories fail because they involve actions taken in litigation.  Chapter 93A applies only to actions taken in the course of "trade or commerce."  It has "never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation", such as non-disclosure of documents.  Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457 (2004).  The Federal Rules of Civil Procedure provide the proper tools for courts to address allegations of purported litigation misconduct.  Id. at 458, n. 4.

Moreover, APAM has not pled—and cannot establish—that any alleged document-production delay by Sovereign to the SEC or in this civil action caused any quantifiable harm to APAM.  The law of this case is the opposite, that any alleged delay in Sovereign disclosure of SEC documents is not actionable under Chapter 93A.  See August 8, 2008 Order of Judge Nancy Gertner, p. 17, note 12.  Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 798 (2006)("[C]ausation is a required element of a successful G.L. c. 93A claim."); Aspinall v. Philip Morris Cos., 442 Mass. 381, 401 (2004).

Finally, APAM has no standing to assert a Chapter 93A claim based on alleged failure to respond to an SEC subpoena.  APAM does not have standing to assert claims for injuries that litigation delays might have caused delay.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 563 (1992) (the "'injury in fact' test requires . . . that the party seeking review be himself among the injured"); <u>American Postal Workers Union v. Frank</u>, 968 F.2d 1373, 1374 (1st Cir. 1992) (a litigant must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct); <u>Barbara F. v. Bristol Div. of the Juvenile Court Dept.</u>, 432 Mass. 1024, 1025, 735 N.E.2d 357, 359 (2000) (no standing where plaintiff did not suffer injury from the allegedly improper court order).

For all these reasons, this Court should grant summary judgment on the Chapter 93A claims that APAM alleges in Count V.

## V.     <u>Other Defenses</u>

In addition to arguments which address the lack of any valid basis for the specific counts of the Amended Complaint, Sovereign is separately entitled to summary judgment on at least three separate bases which apply to all claims or possible claims by Plaintiff Fine as Ancillary Receiver of APAM and Bleidt.

i.     <u>In Pari Delicto</u>.   APAM is barred from any recovery against Sovereign by reason of unclean hands or fault, a defense or bar to claims sometimes called <u>in pari delicto</u>.  As argued below, here the more appropriate term arguably is <u>in toto delicto</u>.

ii.     <u>Loss Causation</u>.   APAM and Bleidt on this record are the legal persons solely causing, and solely liable, for any and all losses to investors.  APAM is liable to investors and any other persons for the undisputed criminal acts of Bleidt as the authorized agent of APAM.

As the legal person liable for causation of loss to other persons, APAM cannot on any known or coherent theory recover those losses for itself nor can it do so, from Sovereign.

  iii. <u>No Damages</u>.  APAM is barred from any recovery from Sovereign because APAM cannot allege, show, or prove that any damages caused to APAM by Sovereign.  APAM and Bleidt have separately each agreed to consent judgments admitting that they stole funds from APAM investor clients of Bleidt.  APAM can show no loss.  APAM improperly gained all stolen assets.  APAM can show no loss to APAM caused by Sovereign.  APAM indisputably engaged in theft of investor funds.  APAM indisputably suffered no actual loss, nor any loss arguably caused to APAM by Sovereign.

  The relevant facts are set forth in the Sovereign Statement of Undisputed Facts ("Sovereign Facts") concurrently filed.  Those facts most relevant to specific counts are described in the argument below, as to each claim.

**A.** **<u>In Pari Delicto</u>.**

  The doctrine of *in pari delicto* "prohibits plaintiffs from recovering damages resulting from their own wrongdoing." <u>Nisselson v. Lernout</u> 469 F.3d 143,151 (1st Cir. 2006).  The doctrine applies to situations where:

  (i) "plaintiff, *as compared to the defendant,* bears at least substantially equal responsibility for the wrong he seeks to redress" and

  (ii) dismissal of this lawsuit "would not interfere with the purposes of the underlying law or otherwise contravene the public interest."

Id. at 152. If the two prongs of this test are met, the defense is established unless an exception applies.  <u>Id</u>. <u>In pari delicto</u> works to bar claims on principles similar to unclean hands and contributory negligence.  <u>Baena v. KMPG</u>, 453 F.3d 1, 6 (1st Cir. 2006).

As the Court in Nisselson teaches, the first step toward applying the above-paradigm is to determine who the proper parties are for determining relative blame. Nisselson, supra, at 152-153. By the terms of the March 22, 2006 Appointment ("Appointment"), the Ancillary Receiver, Mr. Fine, acquired the rights and interests possessed by APAM at the time of the appointment. See Nisselson, 469 F.3d at 153. Thus, in order to determine relative blame, the Court must compare APAM's conduct to Sovereign's conduct at the time of the disputed conduct. Id.

Under the terms of the Appointment, the Ancillary Receiver steps into the shoes of both Bleidt and APAM. Fine is the Receiver of APAM and Bleidt. The Ancillary Receiver has no better claims on behalf of APAM than he does on behalf of Bleidt. See Baena 453 F.3d at 6-7. The Ancillary Receiver is tainted because each of the predecessor in interest persons is tainted. The Ancillary Receiver undeniably steps into the tainted shoes of APAM as of the date of the Bleidt and APAM thefts of investor funds. Nisselson, 469 F.3d at 156 ("Simply put, bankruptcy trustees do not have access to an 'innocent successor' exception as a way of shielding themselves from the operation of an in pari delicto defense").[13]

The Ancillary Receiver can only assert claims of APAM or Bleidt. See August 1, 2008 Opinion, pp. 29-30 ("Legally speaking, Fine can only sue on behalf of Bleidt or the entities named in the order of appointment"). The Ancillary Receiver, standing only in the shoes of APAM cannot recover from Sovereign for APAM. The asserted claims of APAM against Sovereign in the Amended Complaint are unrelated to any rights of investor victims. APAM and

---

[13] A trustee in bankruptcy is limited to the rights of the debtor at appointment. Judge Gertner August 8, 2008 Opinion, note 19. Assuming arguendo that limitation does not apply to an Ancillary Receiver (id.), that does not alter the controlling date of the Nisselson inquiry as to "relative blame." If the Ancillary Receiver post-appointment were to volunteer to disgorge any monetary recovery from Sovereign (he has not), that change in position does not alter the timing or analysis required by the first prong of the Nisselson relative blame test. The equities as between Sovereign and the Receiver are to be determined as of the date of the alleged wrong, not post-appointment. Nisselson, supra, at 152. See Boston Trading Group v. Burnazos, 835 F.2d 1504, 1515 (1st Cir. 1987)(a bankruptcy trustee and receiver are of identical status for the purpose of relative equities inquiry).

Bleidt are by force of the consent judgments already liable for the civil damages caused to investors. Sovereign Facts, ¶ 24. The Receiver for Bleidt and APAM correctly does not purport to assert any rights of any investor Plaintiff victim. APAM and Bleidt indisputably caused all investor losses. See Consent Judgments in SEAC civil action, described and exhibited at Sovereign Facts, ¶ 24. APAM claims for recovery by APAM (Amended Complaint, Counts I – V) are adverse to claims by investors. APAM shares no legal common ground with the investor victims. Wolves do not become sheep after harming the sheep. Wolves do not stand in the shoes of the sheep, nor act for them.

The Ancillary Receiver as successor to Bleidt or APAM, or both, when compared to Sovereign "bears at least substantially equal responsibility for the wrong he seeks to redress". Nisselson, supra, at 152. APAM under the "relative fault" test on this record indeed bears total fault, absent proof of any actionable wrong by Sovereign. APAM and Bleidt have, by consent judgments, agreed to liability and to causation of all investor losses.

**B.    No Exception To In Pari Delicto Applies.**

(i)    No Adverse Interest Exists. The in pari delicto bar is sometimes not applied. One exception is the "adverse interest" exception. A corporation possibly is not barred by in pari delicto if an officer, and no one else, gained from the wrong. Baena, 453 F.3d 1, 7. There is no "adverse interest" exception here. Id. Bleidt is APAM and APAM is Bleidt. Sovereign Facts, ¶ 3.

The policy reason for the adverse interest exception is that a claimant should be deemed innocent if the bad actor is not fully identical to or congruent with the claimant. APAM and Bleidt can make no such argument. Each is admittedly and entirely tainted. Sovereign Facts, ¶ 24. The "innocent actor" rationale arguably suspends the defense because of possible benefit to

innocent persons represented by a claimant. APAM cannot assert to be an innocent claimant. APAM is not entitled to any recovery against Sovereign. APAM is not on this record as a proxy for any innocent person. APAM does not assert any claim for any investor. APAM expressly asserts claims here for APAM alone. APAM expressly does not act on behalf of any investor Plaintiff victims. Compare Amended Complaint Counts I - V, with Amended Complaint Counts VI - XI.

No "adverse interest" exception applies here separately because that exception only applies when "the wrongdoing is done primarily for personal benefit of the officer and is [thereby] 'adverse' to the interest of the company." Baena v. KPMG LLP. 453 F.3d 1, 7 (1st Cir. 2006). Here, Bleidt was APAM and vice versa. Sovereign Facts, ¶¶ 3, 24. Any fraud or theft by Bleidt directly benefited APAM. Id.; see Baena, supra, 453 F.3d at 7-8. Moreover, as the First Circuit later explained, "[t]he adverse interest exception only applies [in favor of] . . . those whom the fraud has disadvantaged" as when, for example, an agent secretly acts adversely to his principal. Nisselson, supra, 469 F.3d at 156. Bleidt's acts were fully authorized by APAM. As the sole officer, director and shareholder of APAM, Bleidt was every constituency of APAM's management and ownership. APAM indisputably was aware, of, engaged in and approved Bleidt's conduct. Sovereign Facts, ¶ 3; August 8, 2008 Order by Judge Gertner, p. 28. See Anderson v. K.G. Moore, Inc., 6 Mass. App. Ct. 386, 390 (1978), cert. denied, 439 U.S. 1116 (1979) (an act "known to and acquiesced in by all the then directors, officers, and shareholders of the corporation... [is] enforceable as an act of the corporation"); Hennessey v. Nelen. 299 Mass. 569, 572-573, 13 N.E.2d 431, 433 (1938)("Where as here, all the stockholders and officers, with full knowledge of the facts, assented to the transaction, the corporation cannot complain that it was fraudulent") (internal quotations and citations omitted). Knauser v. Jonathon Roberts

<u>Financial Group, Inc.</u>, 348 F.3d 230, 234-237 (7th Cir. 2003)(dismissal of receiver's claims where corporate officers defrauded investors). As the First Circuit has noted, "it is not our [i.e., the federal courts'] job to make new law for Massachusetts by adopting a peculiarly narrow view of the adverse interest exception <u>in pari delicto</u>; such alterations, if deemed wise, are for the state courts." <u>Baena v KPMG LLP</u>, 453 F.3d 1, 8 (1st Cir. 2006).

The adverse interest exception is not applicable here, thirdly, because Bleidt's conduct is imputable to APAM under principles of agency law. It is undisputed that Bleidt was the sole officer, director and shareholder of APAM. Bleidt as such exercised complete control over APAM. The Ancillary Receiver alleges and admits in the Amended Complaint that Bleidt was the only person on behalf of APAM authorized to write or endorse checks, apply for a loan, apply for or receive letters of credit, or do anything else with respect to the APAM account at Sovereign. (Am. Compl. ¶ 24(b). <u>See</u> Sovereign Facts, ¶ 3. By his own admission, Bleidt carried out his scheme to defraud clients "through" APAM. (Am. Compl. ¶ 10). In Massachusetts, "the fraudulent conduct of persons or entities who exercise complete control over a corporation may be imputed to the corporation when those actors have used the corporation as a vehicle for facilitation of the fraud." <u>Nisselson</u>, 469 F.3d at 154; <u>see also</u> <u>Comm. Of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand</u>. 322 F.3d 147,164-65 (2d Cir. 2003) (fraudulent conduct imputed to debtor where complaint established that controlling shareholders "dominated] and control[ed] the corporation" and were responsible for "orchestrat[ing] the fraudulent conduct"). Vicarious liability requires that one party to be held liable for the conduct of another by virtue of a legally cognizable relationship. <u>United States v. Dynamic Research</u>, 2008 Dist. Ct. Lexis 25354 (D. Mass. 2008)(Gertner, J.)(p. 46). A principal is "subject to liability" in tort although the principal is entirely innocent, has received no benefit from the

transaction, and … although the agent acted solely for his own purposes. "Liability" (specifically vicarious liability of the corporation) is based on the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business provided to him. U.S. v. Dynamics Research, supra, p. 49, quoting Restatement (Second) of Agency, § 261 Comment a.   One of the illustrations in § 262 is informative: "P, whose business is that of advising persons concerning investments, represents to T that A is his manager.   At P's office, T seeks advice of A concerning investments.   A, acting solely to promote an enterprise of which he is the owner, makes deceitful statements in regard to it, on the strength of which T invests and loses.   P is subject to liability to T."   Restatement (Second) of Agency, § 262, illustration 1.  APAM here is in the position of P because it authorized all of Bleidt's thefts.

        (ii)       No Innocent Actor Exception Applies.

A second exception to in pari delicto, related to the first, is to benefit innocent persons who were not decision makers, e.g. innocent shareholders. Baena, at 9-10, and cases there.  The innocent actor exception can apply to benefit innocent creditors of the wrongdoer, e.g. innocent shareholders. FDIC v. D'Melvaney & Meyers, 61 F.3d 17, 19 (9th Cir. 1995).  That issue does not arise on this record.  The issue here is in pari delicto as a bar to APAM claims.  The investors are not shareholders in APAM.  Sovereign asserts the defense only against APAM whether contributory negligence or any other defense may or may not apply against the investor Plaintiffs is not at issue on this motion against APAM.  This Sovereign motion is for the in pari delicto bar only against APAM.

        (iii)      No Public Interest Exception Applies.

Dismissal of APAM's claims will not "contravene the public interest."  Prohibition of the in pari delicto defense is sometimes "a means to give relief to the public through a party."  Arcidi v. NAGE, 447 Mass. 616, 622 (2006) and cases there.  Here the public and the investor Plaintiffs need no such relief.  The investor Plaintiffs most likely are hindered, not helped, if Bleidt and APAM avoid a valid in pari delicto defense.  If APAM is not dismissed, any trial jury will be correctly and hopelessly confused as to how or why the investor Plaintiffs are or appear to be in league with APAM and Bleidt, the persons who obviously and directly caused all investor losses.  Denial of the in pari delicto defense will allow a hopelessly tainted plaintiff, APAM, to taint all other plaintiffs.

      (iv)    All Leading Cases Support The Application Of In Pari Delicto Against APAM Claims On This Record.

Massachusetts case law favors in pari delicto.  Baena, supra, 453 F.3d 1, 6 (1st Cir. 2006) and cases there.  Massachusetts does not limit in pari delicto either by limiting imputation of wrong to corporation persons or by readily finding adverse interests.  Id. at 8, 9.  Massachusetts law likewise does not favor putatively innocent decision makers.  Id. at 10.  The First Circuit follows Massachusetts law in favor of use of the in pari delicto bar on both issues.  Baena at 9-10.

The learned opinion of Judge Posner in Scholes v. Leyman, 56 F.3d 750, 754, 755 (7th Cir. 1995)(see August 8, 2008 Order by Judge Gertner, pp. 323, 34, 36)  is not controlling of this case and is instructive primarily because of the clear distinctions between this case and Scholes as to the factors relevant to standing and application or not of the in pari delicto bar.  The Ancillary Receiver here and in Scholes has standing only to sue on behalf of the persons he represents, and does not have standing to sue on behalf of the creditors of those persons.  Id. at 753 and cases there.  The Receiver in Scholes had standing to assert claims to assets wrongfully

31

transferred by the persons or entities subject to the receivership.  Id. at 754.  Standing in Scholes was logically and practicably supportable because the corporate general partners controlled by one individual had fraudulently transferred to third parties assets contributed by the victim limited partners.  The victims were unwilling participants in a fraudulent enterprise.  The Receiver's claims in Scholes, if supported by proof, would work to recover the assets victims lost as innocent enterprise participants.  Id. at 755.  In that context, the in pari delicto defense loses its sting [sic] if the wrongful actor is "eliminated or recovery by that actor prohibited."  Id. at 754, 755.

None of those facts or factors apply here.  The Ancillary Receiver is not, by the assertion of APAM claims, seeking to trace or recover any assets of the investor Plaintiffs.  He is seeking to impose new liability on Sovereign in tort on theories of claim not coherently able to be asserted by Bleidt or APAM.  Unlike Scholes, here there is no sense in which recovery by the investor Plaintiffs is arguably a recovery of a wasted corporate asset of APAM.  Id. at 755.  Unlike Scholes, the present claims by the investor Plaintiffs are a non-duplicative, available, and potentially a complete remedy for any alleged wrong.  There is no risk of an undue delay or any lack of available remedy for any innocent victim.  Unlike Scholes, Sovereign and any jury are entitled to know as to Bleidt and APAM that Bleidt and APAM caused any losses in question.  Unlike Scholes, APAM and Bleidt have no standing to recover investor funds from Sovereign.  APAM itself indisputably caused all investor losses.  Sovereign Facts, ¶ 24.  Application of in pari delicto here serves the interest of fairness as to Sovereign and is fully coherent and fair as to the investor Plaintiffs.  The defense here coherently and comprehensibly mirrors the equities.  It presents no undeserved risk of stain to APAM.  Id. at 754.  Sovereign Facts, ¶ 3.

Scholes properly read, decided, first, the issue of standing and secondly the application or not of in pari delicto. Here the dominant and inescapable conclusion is that APAM does not have any standing to assert any claims for investors. The investor Plaintiffs are doing so and are fully capable of doing so. No reason for non-application of in pari delicto arises. If any question of application or not is posed, the answer is unmistakable that any claims by Bleidt and APAM are properly barred in their entirety. Denial of the defense disserves the investor Plaintiffs by allowing or requiring they be joined as plaintiffs with APAM, one admitted cause of all of their losses. Sovereign Facts, ¶ 24. Denial of the defense will be incoherent and confusing to any jury if the full facts are ever to be considered by a jury at trial.

Choquette v. Isakoff, 65 Mass. App. Ct. 1, (2005)(see August 8, 2008 Order by Judge Gertner, pp. 25, 30, 31, 35) provides no support for a public interest exception against the bar on the facts here. The public interest exception described in Choquette is triggered only where the parties involved in the illegal and improper conduct not in equal default or are not in pari delicto and where there are elements of public policy more outraged by the conduct of one than the other. Choquette, 65 Mass. App. Ct. at 4. A client who willingly follows the advice of an attorney to commit perjury is in equal fault despite the offense of public policy by the attorney who encourages and permits the perjury. Id. The same rule obtains here. APAM, at best, is an "evil zombie" or "robotic tool" of Bleidt. APAM has consented to judgment acknowledging that APAM caused all of the losses in dispute. Scholes, supra at 754. No taint of illegality reaches Sovereign except for the causes of action alleged against it by APAM and Bleidt, none of which are valid. APAM and Bleidt cannot avoid in pari delicto on behalf of the investor Plaintiffs because the Receiver does not represent the investor Plaintiffs. Their claims stand or fall separately from any claims of APAM or Bleidt. Whether in pari delicto should apply to protect

33

Sovereign against the investor Plaintiffs or whether comparative negligence bars any claims by the investor Plaintiffs is not a live issue in consideration of the defense as a bar APAM and Bleidt claims.

Nisselson v. Learnout, 469 F.3d 151 (1st Cir. 2006)(August 8, 2008 Order, pp. 25, 26, 27, 29, 30), already discussed, without exception favors application of the in pari delicto defense as to any claims by APAM and Bleidt against Sovereign.  Under the binary analysis applied to the defense, id. at 152, the element of fault is assessed at the time of the wrongdoing.  Id. at 155.  Imputation of the wrongdoing of Bleidt to APAM questionably proper because Bleidt was the sole decision-maker for APAM.  Bleidt created and used APAM to carry out fraud, as APAM itself concedes.  Id. at 155; Sovereign Facts, ¶ 3.  The comparison of the wrongdoing by Bleidt/APAM (as one party) to the alleged wrongdoing of Sovereign as to those persons, as the other, leads to the conclusion that the defense is available and should be applied consistent with the strong tendency of courts in Massachusetts to apply that defense.  Id. at 155, 152.  Although factual disputes may exist on other issues, this record is clear enough on the relevant facts to permit peremptory resolution of this dispositive issue.  Id. at 154.  As in Nisselson, the second part of the binary analysis favors permission of the defense because the Receiver brings claim on behalf of fraudulent and complicit parties and on behalf of no one else.  Id. at 157.  As in Nisselson, Sovereign if liable to anyone faces the pending lawsuit by the investor Plaintiffs.  Id. Permission of the in pari delicto defense is appropriate because the defense prevents fraudulent parties from backdoor means of obtaining benefit from their fraud while preserving all rights of allegedly innocent investor Plaintiffs.  Id. at 157.

(v)  <u>No Fact Or Other Valid Argument Bars The In Pari Delicto Defense</u>.

This Court (August 8, 2008 Opinion, pp. 30-31) discussed possible non- application of <u>in pari delicto</u> if there is "effective divestment" of the wrongdoer "from any stake in the recovery."   Opinion, pp. 30-31 and note 19.  Here, direct assertion of claims by the investors fully and finally resolves that possible issue.  Permission of invalid claims by the Ancillary Receiver against Sovereign, by contrast, is inconsistent with "elimination" of the wrongful actor and inconsistent with "effective divestment" of the wrongdoer from "any stake in a recovery" (August 8 Opinion, note 19, pp. 30-31).  The plain and open "path to elimination" of any tainted plaintiffs (<u>id</u>.) is dismissal with prejudice of all claims by APAM, Counts I - V of the Amended Complaint.

APAM and Bleidt cannot act for the investor Plaintiffs on any equitable or principled basis on this record.  If there are any infirmities of investor claims against Sovereign (e.g., the absence of any duty to those persons) those cannot, in the name of "equity" be erased by the fiction that APAM and Bleidt fictitiously sue on behalf of investor Plaintiffs.  That result is prohibited by substantive law and, <u>inter alia</u>, by the consent judgments by APAM and Bleidt.  Sovereign Facts, ¶¶ 21, 24.  Having admitted criminal liability and civil liability to investor plaintiffs, APAM and Bleidt are tainted and estopped, and cannot in fairness or equity as to Sovereign be used to gain otherwise non-existent standing or benefit for the investor Plaintiffs against Sovereign.

Dismissal of the Receiver's claims based on <u>in pari delicto</u> is fair to all parties precisely because the investors here separately and directly assert the same kinds of claims in their own right.  All investor victims are and can be directly represented by persons other than the Ancillary Receiver.  They are not entitled to any artificial constructive trust or any other artificial remedy.  The Ancillary Receiver correctly does not assert rights of any investor victims.  The only sole means to do so requires judicial approval of invalid [sc. APAM] claims and inevitable jury confusion or misdirection or deception as to

the relation between any APAM claim and investor recovery.  Those risks are pointless where as here the allegedly injured investor parties pursue direct claims.  Use of a constructive trust would also contradict or undermine the basic principle that the Receiver only asserts the rights of Bleidt and APAM, "the entities named in the Order of Appointment."  August 8, 2008 Opinion, 29-30 and cases there.

APAM and the investors are estopped to assert that the investors need or require APAM to act for them.  All Plaintiffs, including the Receiver, vigorously assert that all investors have strong individual and class action claims.  See Motion for Class Certification.  Plaintiffs, as proponents of the class certification, are estopped to assert the contrary.  The Receiver of APAM has no standing and no cognizable claims against Sovereign.  By contrast, the investors individually and as a class directly seek to recover investor stolen funds from Sovereign.  Given those facts, any judicial desire to protect the investors is no basis to prohibit in pari delicto.  Prohibition of a valid defense is unprincipled if the sole purpose is to assure economic loss to Sovereign or to assure recovery by those allegedly victimized, no matter how valid or not their separate claims.  No unprincipled constructive trust is ever equitable.  The view that "any excess money in the Receivership [sic] will plainly go to the investors, not Bleidt [sc. or APAM]" (August 8, 2008 Order by Judge Gertner, p. 37) misses or ignores the relevant point as to in pari delicto.  Judicial desire to protect investors is irrelevant to, not an explanation for denying, Sovereign's valid defense as against APAM.

Summary judgment on all Receiver claims also will not affect any compensation earned or to be earned by the Ancillary Receiver nor the quality of investor representation.  The Ancillary Receiver is already able to be compensated for any amounts the Ancillary Receiver is "instrumental" in recovering from Bank's for Bleidt's investor victims.  March 22, 2006 Order of

Appointment, ¶ 8(a).  After grant of summary judgment against APAM (and absent some other order), the Ancillary Receiver, Mr. Fine, is free to work "on behalf of" the investors in pursuit of claims against Sovereign.  Id.  Those investor claims, valid or not, will directly benefit from dismissal of claims by an illegitimate plaintiff, APAM.

**B.    Sole Causation Bars All APAM Claims.**

Here as to APAM and Bleidt, summary judgment is proper by reason of the rule of sole causation.  APAM and Bleidt cannot and should not recover, from anyone, losses they wrongfully caused.  Bleidt and APAM indisputably harmed APAM investors.  See Consent Judgments in SEC civil action; Sovereign Facts, ¶ 24.  APAM cannot recover from Sovereign because APAM, not Sovereign, is directly liable to the investors and is separately liable as Bleidt's principal.

APAM and Bleidt on present record are the only legal persons who caused and who are liable for any and all losses to investors.  See May 3, 2007 Consent Judgments in SEC action, Sovereign Facts, § 24.  APAM is liable to investors and any other persons for APAM's acts and for the undisputed criminal acts of Bleidt as the authorized agent of APAM.  As the legal person liable for causation of loss to other persons, APAM cannot on any principled basis or coherent theory recover those losses for itself nor can it do so for anyone else from Sovereign.

**C.    APAM suffered And Can Prove No Compensable Losses To APAM.**

APAM is barred from any recovery from Sovereign because APAM cannot allege, show, or prove any damages caused to APAM by Sovereign.  APAM and Bleidt have agreed to consent judgments that they stole funds from clients of APAM.  Sovereign Facts, ¶ 24.  APAM was enriched by thefts, and can show no loss to APAM.  APAM improperly gained stolen assets.  APAM further can show no loss to APAM caused by Sovereign.  APAM indisputably engaged in theft of investor funds.

Sovereign Facts, ¶ 24.   APAM indisputably suffered no actual loss nor any loss caused to APAM by Sovereign.

**D.**    **APAM Is Barred Because It Sufferd And Can Prove No Compensable Losses.**

There was no monetary harm done to APAM by Bleidt, and no damages for APAM to recover from Sovereign. All deposits to APAM enriched APAM.  They were, if wrongful as to others, not themselves, a breach of Bleidt's fiduciary duty to APAM because APAM, owned solely by Bleidt, was for relevant purposes, Bleidt's co-equal partner in the business of theft from APAM investors by misuse of investors' trust.  Sovereign Facts, ¶¶ 3, 15.  APAM was enriched by Bleidt's thefts, not harmed, and APAM was never "innocent" or distinct from Bleidt. Sovereign Facts, ¶ 3.  All thefts benefited APAM and APAM's sole shareholder, Bleidt.  When APAM or Bleidt transferred or spent stolen funds, those transfers did no harm to APAM or Bleidt.  Sovereign Facts, ¶¶ 10-13.  Nothing shows, in any event, that Sovereign knew of or wrongfully assisted in those entirely ordinary transfers from the APAM account. Those transfers were all by properly drawn checks on a business account by the authorized APAM signatory, Bleidt.  Sovereign Facts, ¶¶ 7, 10, 12.  APAM can prove no loss and no loss wrongfully caused to APAM by Sovereign.

## CONCLUSION

For all the foregoing reasons, Sovereign respectfully requests that this Court GRANT summary judgment against APAM on Counts I-V of the Amended Complaint and DISMISS APAM as a party to this action.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Sovereign requests that the Court hold oral argument on this motion.

SOVEREIGN BANK
By its attorneys,

/s/ Patrick T. Voke
/s/ Paul G. Boylan
/s/ Daniel J. Blake
Patrick T. Voke, BBO #553033
Paul G. Boylan, BBO #052320
Daniel J. Blake, BBO #552922
LECLAIRRYAN, A Professional Corporation
One International Place, 11th Floor
Boston, MA  02110
(617) 502-8200
Patrick.Voke@leclairryan.com
Paul.Boylan@leclairryan.com
Dated:  November 3, 2008                        Daniel J. Blake@leclairryan.com


<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that this document filed through the ECF System will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and is also being served by regular mail on David J. Fine, Esq., 40 Court Street, Suite 700,
Boston, MA  02108 and Melanie Oxhorn, Esq., 1137 Massachusetts Ave., #2, Cambridge, MA
02138.


Dated: November 3, 2008                    /s/ Paul G. Boylan
4701361.1