```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| **DAVID J. FINE, as he is** ) <br> **Receiver of Bradford C.** ) <br> **Bleidt and Allocation Plus** ) <br> **Asset Management Co.,** ) <br> **et al.,** ) <br>   **Plaintiffs,** ) <br> ) <br>   **v.** ) <br> ) <br> **SOVEREIGN BANK,** ) <br>   **Defendant.** ) | Civil Action No. 06CV11450-NG |

GERTNER, D.J.:

**ORDER AND MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT**
November 26, 2008

I.  **INTRODUCTION**

The Plaintiffs' Motion for Partial Summary Judgment Regarding Specific Third-Party Checks (document # 264) is DENIED. The Defendant's Motions for Summary Judgment (document # 276, 279) are DENIED with respect to Counts I, II, III, IV, VI, VII, and XI. Given the substantial legal issues associated with the investor-clients' negligence claims, Counts VIII and IX, the Court RESERVES ruling on these counts for further consideration. Because they are not jury claims, the Court also RESERVES ruling on the Chapter 93A claims pleaded in Counts V and X.

The relevant factual background is summarized in this Court's 8/8/08 Order (document # 209). Based on these facts, Plaintiffs have presented four basic theories of recovery: (1) aiding and abetting breach of fiduciary duty; (2) conversion

based on the taking of instruments with notice of breach of fiduciary duty under M.G.L. c. 106, § 3-307; (3) negligence; and (4) unfair and deceptive trade practices under Mass. Gen. L. c. 93A.  The first three theories are treated in turn below, while it is not necessary to address the fourth at this time.

The Court recognizes that the conversion theory, which it adopts here, as well as the negligence theory involving the investor-clients, which it has reserved, raise novel questions of law.  The Court expects that Sovereign will address these issues again at the close of the Plaintiffs' case.  Moreover, the Court also expects that the parties will draft special interrogatories to the jury so that the jury's findings vis-a-vis the respective theories can be readily identified.  Because the first theory, aiding and abetting breach of fiduciary duty, necessarily involves evidence encompassing the other theories, the Court chooses to proceed in this fashion, without prejudice to Sovereign's ability to address the legal claims at a further stage in the proceeding.

II.  **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

Plaintiffs' first theory, pleaded in Counts I and VI, is aiding and abetting a breach of fiduciary duty.  The elements of the tort of aiding and abetting a fiduciary breach are well-established under Massachusetts law: (1) there must be a

breach of fiduciary duty; (2) the defendant must know of the breach; and (3) the defendant must actively participate or substantially assist in or encourage the breach to the degree that he or she could not reasonably be held to have acted in good faith. See <u>Arcidi v. Nat'l Assoc. of Government Employees, Inc.</u>, 447 Mass. 616, 623-24 (2006); <u>Spinner v. Nutt</u>, 417 Mass. 549, 556, 631 N.E.2d 542 (1994). The Court finds that there are contested issues of fact, and thus DENIES summary judgment on Counts I and VI. Those contested issues include (1) whether APAM was simply Bleidt's shell or alter ego, and therefore can claim no fiduciary duty from Bleidt (i.e., piercing the corporate veil, which would be an affirmative defense to Count I); (2) Sovereign's knowledge of Bleidt's breach of fiduciary duty to APAM and its investor-clients; and (3) Sovereign's active participation or substantial assistance in those breaches, to the degree that Sovereign could not reasonably be held to have acted in good faith.

III. **CONVERSION ON NOTICE OF BREACH OF FIDUCIARY DUTY**

Plaintiff's second theory, pleaded in Counts II and VII, is conversion based on the taking of instruments with notice of breach of fiduciary duty under M.G.L. c. 106, § 3-307. As an initial matter, the Court rejects Sovereign's objections as to lack of notice or surprise that the claim would be regarded as

one for conversion.  The Court plainly stated in its 8/8/08 Order the view that these Counts sounded in conversion, and the Plaintiffs themselves labeled these conversion claims as far back as April 2008.  See 8/8/08 Order at 3, 43 (document # 209); Plaintiffs' 4/3/08 Reply Mem. in Support of Partial Summary Judgment at 4-5 (document # 166).

The Court will not allow the Plaintiffs to proceed, however, on a theory of liability based on breach of trust under Section 324 of the Restatement (Second) of Trusts.  The Plaintiffs offer such a theory for the very first time in papers filed on 11/24/08, without any prior notice to the Defendant.  See Pl. Reply to Sovereign's Opposition to the Motion for Partial Summary Judgment at 1-2 (document # 306-3).

Nonetheless, the Court finds that the Plaintiffs have properly stated exactly the type of conversion claim contemplated by Mass. Gen. L. c. 106, § 3-420(a) and § 3-306, based on the Defendant's alleged taking of an instrument with notice of breach of fiduciary duty.  See Mass. Gen. L. c. 106, § 3-420(a) ("The law applicable to conversion of personal property applies to instruments.  An instrument is [] converted if . . . a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."); Id. § 3-306 ("A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of

4

a property or possessory right in the instrument or its proceeds . . . ."). To be sure, no Massachusetts court has previously addressed such a conversion claim, a fact inviting caution. Nevertheless, this cause of action is apparent on the face of the statutory provisions when read together. See Jairett v. First Montauk Securities Corp., 153 F.Supp.2d 562, 570 (E.D. Pa. 2001) (refusing to dismiss claims under 3-306 and 3-307); 2 J. White and R. Summers, Uniform Commercial Code (5th ed. 2008) §§ 18.4, 19.5.

The Plaintiffs, who are payees on the instruments, may show conversion by proving that Sovereign accepted checks which Bleidt, acting as a fiduciary, was not authorized to deposit in a non-fiduciary account. As a defense to this claim, Sovereign may argue that it accepted the checks as a holder in due course. See Mass. Gen. L. c. 106, §§ 3-302, 3-306 ("A person having rights of a holder in due course takes free of the claim to the instrument.").

Plaintiffs can overcome this defense only by proving that Sovereign was not a holder in due course because it had notice of Bleidt's breach of fiduciary duty, as that notice is "comprehensively" defined in § 3-307. Mass. Gen. L. c. 106, § 3-307, cmt. 1; see Jelmoli Holding, Inc. v. Raymond James Financial Services, Inc., 470 F.3d 14, 18-19 (1st Cir. 2006). In this effort, Plaintiffs rely, in particular, on §

3-307(b)(2)(iii).  Accordingly, notice of a breach of fiduciary here requires actual knowledge of "the fiduciary status of the fiduciary" with respect to each payee -- whether the investor-client or APAM itself -- and deposit of the instrument into "an account other than an account of the fiduciary, as such, or an account of the represented person."  <u>See</u> Mass. Gen. L. c. 106, § 3-307(b); <u>Jelmoli</u>, 470 F.3d at 19 (holding that "[t]he plaintiff must also show knowledge by the taker, and not just warning clues, that the person tendering the check is a fiduciary").

    Contrary to Sovereign's claims, this knowledge is not merely that of the teller or clerk who initially accepted the check; it includes the knowledge of the "individual conducting the transaction," which in this case includes branch manager David Magrath who, it is alleged, personally approved or was required to approve each third-party check for deposit.  Comment 2 to § 3-307 expressly states that in "many" -- not all -- cases this individual will be the clerk who receives and processes the instrument.  Here, there is no issue of imputing knowledge to the bank where Magrath himself allegedly reviewed each third-party check while aware of Bleidt's breach of fiduciary duty.  <u>See</u> U.C.C. § 1-202(f) (reviewing principles of organizational knowledge).

In sum, the elements of Plaintiffs' conversion claim require that they show that: (1) an instrument was taken from a fiduciary for payment or collection or for value; (2) an individual conducting the transaction had actual knowledge of the fiduciary status of the fiduciary with respect to the payee; and (3) the instrument was deposited into an account other than an account of the fiduciary, as such, or an account of the represented person. These elements, if proven, negate Sovereign's status as a holder in due course under § 3-307 and establish liability for conversion under § 3-420(a) and § 3-306.

Neither party disputes that the '545 Sovereign account, into which the third-party checks were deposited, was not a fiduciary account but a "business operating account." See Def. Statement of Undisputed Facts ¶ 9 (document # 289).  Nonetheless, the Court finds that there are contested issues of fact and thus DENIES summary judgment on Counts II and VII.  These contested issues include: (1) whether Sovereign had knowledge of APAM's and/or Bleidt's fiduciary status with respect to the payee of each third-party check; and (2) whether APAM was simply Bleidt's shell or alter ego, and therefore can claim no fiduciary duty from Bleidt (i.e., piercing the corporate veil, which would be an affirmative defense to Count II).

Finally, although Count XI pleads a slightly different theory of conversion, based on Sovereign's acceptance of the

Panos checks without proper indorsement, it ultimately comes down to the same question. Ms. Panos received delivery of the checks through her agent and investment manager, Bradford Bleidt, who was also her designated transferee. See Mass. Gen. L. c. 106, § 3-420(a)(ii). Indeed, contrary to Sovereign's arguments, Bleidt could not have been a transferee at all unless he received delivery of the instruments on her behalf at his own address. See id. § 3-420, cmt. 1 ("Delivery to an agent is delivery to the payee."). Bleidt, however, was not a transferee entitled to enforce the instrument or having any rights as a holder in due course because he engaged in "fraud or illegality" in obtaining the checks from Panos. See id. §§ 3-203(b); 3-301. Accordingly, Sovereign may be liable for a claim in conversion under § 3-420 unless it accepted the unindorsed checks as a holder in due course. See id. §§ 3-302, 3-306. Thus, just as in Count VII, if Plaintiff Panos can show that Sovereign had notice of Bleidt's breach of fiduciary duty, or otherwise failed to take the check as a holder in due course, she will have proven conversion. The contested factual issues implicated in this determination are at least as broad as those surveyed above. Count XI is therefore also appropriate for trial.

IV.    **NEGLIGENCE**

Plaintiff's third theory, pleaded in Counts III, IV, VIII, and IX, states a claim for negligence. No Massachusetts court has squarely recognized a bank's duty to third-party non-customers such as the investor-clients, which would be required to recover on Counts VIII and IX. Nonetheless, as the Court observed in its 8/8/08 Order, there may be a basis for finding such a duty to non-customers in certain circumstances. Under state law, which controls here, the basic inquiry is whether "considerations of policy . . . lead the law to say that the plaintiff is entitled to protection. . . . No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists."  Afarian v. Massachusetts Elec. Co., 449 Mass. 257, 261-62 (2007) (internal quotation marks omitted). The party potentially subject to liability must be able to foresee the risk to another.  Id. at 262. The Court must also consider whether the actor or the person harmed is in a better position to bear the harm, including the relative burden for each in avoiding the harm.  See Vaughan v. E. Edison Co., 48 Mass.App.Ct. 225, 229 (1999).

New York has explicitly permitted a negligence suit against a bank by a third-party non-customer. Although accepting the general rule that banks owe no duty of care to third-party non-customers, the New York courts have carved out a narrow

9

exception for instances in which the bank is or should be aware of its depositor's breach of fiduciary duty with respect to a third-party non-customer. See, e.g., Lerner v. Fleet Bank, N.A., 459 F.3d 273, 287-88 (2d Cir. 2006); Bischoff, 218 N.Y. at 112-14; Home Sav. of Am. v. Amoros, 233 A.D.2d 35, 39 (N.Y.A.D. 1997). "[A] bank may be liable for participation in the diversion [of funds by a fiduciary], either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed." In re Knox, 64 N.Y.2d 434, 438 (1985).

If the Court were to adopt a limited negligence theory of liability as to non-customers, based on its informed prediction of state law, it would recognize that the bank has a duty to exercise reasonable care to protect deposited funds from misappropriation by fiduciaries. See McCallum v. Rizzo, 1995 WL 1146813 at *2-3 (Mass.Super. 1995) (citing factors that may support a duty to non-customers). More specifically, the investor-clients could only prevail where the bank, acting in the course of its business and with notice or knowledge of breach of fiduciary duty, had negligently permitted the fiduciary to misappropriate funds belonging to the principal. Proving such a claim would require the Plaintiffs to show that: (1) the bank had actual knowledge of the fiduciary's status as a fiduciary with respect to the non-customer; (2) the bank had notice of a breach of fiduciary duty with respect to the non-customer; (3) the bank

10

failed to exercise ordinary care in relation to the represented person's funds; and (4) the bank's actions were a proximate cause of harm to the non-customer through the diversion or misappropriation of funds. In addition, while the Court RESERVES ruling on Counts VIII and IX, it notes that if the investor-clients wish to proceed on a negligence theory, the Defendant will surely be entitled to put on evidence of the investor-clients' contributory negligence at trial as part of its defense. See generally Shantigar Found. v. Bear Mountain Builders, 441 Mass. 131 (2004) (discussing Massachusetts rules for comparative negligence).

On APAM's negligence claims, Counts III and IV, the Court DENIES summary judgment. Sovereign owed a duty of ordinary care to its customer, APAM, which may recover damages for pecuniary loss. See, e.g., Mass. Gen. L. c. 106, § 4-103(a) (providing that the parties to a bank deposit or collection agreement "cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure"); see also id. § 4-406(d) (discussing bank's duty of ordinary care to its customer and allocation of any loss). Accordingly, in order to prove its negligence claim, APAM must show (1) that Sovereign had notice of Bleidt's misappropriation of APAM funds; (2) that Sovereign failed to exercise ordinary care in relation to those funds; and

(3) that Sovereign's actions were a proximate cause of harm to APAM through the diversion or misappropriation of the funds. Much like its conclusions above, the Court finds contested issues of fact concerning, at a minimum, (1) whether Sovereign had notice of Bleidt's misappropriation of APAM funds; and (2) whether Sovereign exercised ordinary care in relation to the funds.

**SO ORDERED.**

**Date: November 26, 2008**      */s/Nancy Gertner*
                                 **NANCY GERTNER, U.S.D.C.**