UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| DAVID J. FINE, in his capacity as Court-Appointed Ancillary Receiver of Bradford C. Bleidt and Allocation Plus Asset Management Company, Inc., et al., | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| JOEL ABRAMSON, et al., | ) | Civil Action No. 06-11450-NG |
| | ) | |
| Intervenor-Plaintiffs, | ) | (Leave to File Granted |
| | ) | on March 26, 2010) |
| v. | ) | |
| | ) | |
| SOVEREIGN BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

INTERVENORS' SUR-REPLY BRIEF IN OPPOSITION
TO SOVEREIGN'S MOTION TO DISMISS (**CORRECTED**)[1]

I. Sovereign's Proper Party Objections Are Properly Remedied
by Intervenors' Proposed Amendment to Their Complaint.

Intervenors' proposed amendment is entirely appropriate.  Especially because

Intervenors' existing Complaint gave Sovereign notice of the checks at issue and those checks

were available to the bank at all times, Sovereign can make no legitimate claim of prejudice.  See

Intervenors' Reply in Support of Motion to Amend Complaint (docket #500).  No substantial

right of Sovereign's would be impaired by the amendment.  Fed.R.Civ.P. 61.

---

[1] Through inadvertence, the Sur-Reply Brief filed by Intervenors yesterday, 4/7/10, was an interim draft.  The present Sur-Reply Brief is the Brief in final form and the one Intervenors intended to file yesterday.

II. Sovereign's Objections to Checks on the Ground They
Are Not "Third Party Checks" Are Without Merit.

Beyond what intervenors stated in their Memorandum in Opposition (docket #494), it

will suffice for intervenors to state the following.

First, contrary to Sovereign's claim (S.R.Mem. 4) the language where the interest of the

intervenors is expressly included as part of the identification of the payer was sufficiently

identified.  To remove any doubt about this, however, intervenors highlight this language in the

footnote below.[2]  Because the interest of the intervenor is included as part of the identification of

the payee, the intervenor has a property interest in the check itself, and can sue for conversion of

the check even assuming the standard of American National Ins. Co. v. Citibank, N.A., 543 F.3d

907, 909 (7th Cir. 2008) applies.  Notably, in the American National case itself, in contrast to the

situation here, ANICO was

> not a payee, indorsee or any other entity recognized upon the instrument
> themselves.

543 F.3d at 910.

Second, more generally, with regard to all 19 of the checks Sovereign challenges, the

American National case is distinguishable because that case did not involve a fiduciary

---

[2] Bleidt 3 -- Financial Perspectives Inc Fbo Mary Francis Bleidt
  Bleidt 4 -- Financial Perspectives Inc Fbo Mary Francis Bleidt
  Francis 1 -- NFS/APAM FBO Joan Francis
  Gilbert 1 --  National Financial Services LLC TT IRA Donald Gilbert
  Iatridis 1 --  National Financial Serv FBO Anna D. Iatridis IRA
  Martin 1 --  NFS APAM FBO Priscilla A Martin FPPS Attn Brad
  Martin 2 --  APAM for Benefit of Priscilla A. Martin
  McCarthy 3 --  National Financial Srv / A Cus of IRA of Sandra J. McCarthy
  Tompkins 3 --  Financial Perspectives Planning Services, Inc. ... F/A/O A. Tompkins & D.
          Tompkins Attn:  B.C. Bleidt
  Tully 1 --  National Financial FBO Tully, Marilyn
  Turner 1 --  NFS/APAM FBO Nathan S. Turner
  Willens 1 --  NFB / FMTC / APAM FBO Richard L. Willens

relationship or a claim under M.G.L. c. 106 §3-307(b).  Here, the conversion resulted not simply from the wrongful cashing of a check but rather from the bank's wrongful acceptance for deposit of trust funds into an account that was not an account of the fiduciary as such or an account of the represented person.  Intervenors' position that beneficial ownership of the funds represented by a check is sufficient to support a claim for conversion of this type is supported by 3-307's contemplating that a represented person will have a claim under 3-307 in a situation where the payee on the check is the "fiduciary as such."[3]

Because of the special nature of the conversion here, some of the rules regarding other types of conversion do not apply.  Thus, for example, while the drawer of the check does not typically have an action for conversion against the depository bank under Section 3-420, a represented person who is the drawer of an instrument does have such a right in cases subject to Section 3-307(b), as expressly recognized in c. 106 §3-307(b)(4).  Moreover, since the fiduciary in such cases may be the actual payee on a check issued by or on behalf of the plaintiff, a bank that deposits funds into the wrong account with notice that this involves a breach of fiduciary duty to the plaintiff is not protected from liability for purposes of Section 3-307(b)(2) merely as a result of the fiduciary's payee status.

---

[3] Contrary to S. Reply Mem. 5, with specific reference to the Tompkins 2 check, the intervenors have sufficiently alleged beneficial ownership of the funds by virtue of the Complaint identifying the Tompkins 2 check as a check as to which the Tompkins intervenors are claiming conversion.

### III.  Sovereign's Statute of Limitations Objections Are Without Merit.

### A.  The Discovery Rule Applies[4]

Sovereign's contention that the discovery rule should not apply here fails to recognize

and address the nature of the Intervenors' allegations.  As discussed in the Intervenors'

memorandum in opposition to Sovereign's motion to dismiss, Count II of the Amended

Complaint asserts that Sovereign engaged in, among other things, conversion of trust funds by

participating in a breach of fiduciary duty within the meaning of Restatement (Second) of Trusts

§324 and M.G.L. c. 106 § 3-307(b).  In view of these allegations and Sovereign's admitted

failure to provide bank statements reflecting these transactions to anyone other than Bleidt

himself (the very individual who Sovereign knew or should have known was violating his

fiduciary obligations to the Intervenors), the earliest date that the Intervenors could reasonably

have known about the underlying injury would have been November 2004, when they first

received  news of Bleidt's confession.

The cases cited by Sovereign (Reply Mem. at p. 7) for the proposition that the discovery

rule should be inapplicable in cases involving check conversion claims arising out of the bank-

customer relationship are clearly inapposite here insofar as they do not involve situations where a

---

[4] As an initial matter, even if the Court rejected intervenors' argument (Opp. Mem. 8) and viewed Massachusetts as not having decided whether its generally-applicable-to-tort-claims discovery rule should apply to a claim against a bank for participating in a breach of trust or knowingly depositing trust funds into a non-trust account, this Court should still deny Sovereign's Motion to Dismiss.  Particularly where, as here, other counts of the Amended Complaint would clearly survive Sovereign's motion to dismiss "certain claims" pursuant to Fed. R. Civ. P. 12(b)(6) (and in view of the general presumption against dismissing at the pleadings stage based on the absence of any set of facts that would establish the existence of a cause of action), it is appropriate for the Court to err in favor of allowing the claim for conversion to proceed at this early stage instead of dismissing based on statute of limitations objections involving arguably unsettled questions of state law.  See, e.g., Christie v. Borough of Folcroft, 2005 WL 2396762, *13 (E.D. Pa. Sept. 27, 2005); Shgeirat v. U.S. Airways Group, Inc., 515 F. Supp.2d 984, 1008 (D. Minn. 2007).

bank is alleged to have participated in a breach of fiduciary duty in connection with the deposit or withdrawal of trust funds belonging to the plaintiffs.  See, e.g., Arkwright Mut. Ins. Co. v. State Street Bank & Trust Co., 428 Mass. 600, 603-04 (1998); Menichini v. Grant, 995 F.2d 1224, 1230-32 (3d Cir. 1993).

In particular, in Arkwright Mut. Ins. Co. v. State Street Bank & Trust Co., 428 Mass. 600 (1998), the Court declined to apply the discovery rule to claims by a customer against a bank under an earlier version of G.L. c. 106, § 4-406(4), which stated in relevant part:

> Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer . . . discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

428 Mass. at 602 (quoting G.L. c. 106, § 4-406(4)).

As the Court observed, "[t]he earlier statute, therefore, precludes bank liability where the claimant fails to notify the bank within the relevant time period."  Id.  In declining to apply the discovery rule with respect to such customer claims against a bank, the Court relied upon its statement in an earlier case that the period in former Section 4-406(4) "is not a statute of limitations which might not start to run until the plaintiff knew or should have known of his attorney's treachery," but, rather, "[i]t is a statutory prerequisite of notice" that "governs the time within which a party to a contract is obligated to act (in this case, give notice to the bank)." Arkwright, 428 Mass. at 605 (quoting Jensen v. Essexbank, 396 Mass. 65, 66-67 (1985)).

In short, in Arkwright and Jensen, the Supreme Judicial Court held only that the "statutory prerequisite of notice" in former Section 4-406(4) barred bank liability whenever the plaintiff-customer failed to give timely notice after bank statements were made available to

him/her, inasmuch as that provision sets forth "the time within which a party to a [banking]

contract is obligated to act." Jensen, 396 Mass. at 67.  See also Arkwright, 428 Mass. at 605-07.

The relevant statute specifically provided on its face that even in situations where the plaintiff-

customer may have acted reasonably in failing to discover an unauthorized indorsement, no

cause of action under either the U.C.C. or the common law could be recovered.  The reason that

the discovery rule was deemed inapplicable in these circumstances is that a customer who

receives copies of bank statements was presumed to have sufficient notice of any improper

charges to his account with the bank or the ability to discover them within the allotted time

period.  See Arkwright, 428 Mass. at 603-04 (discussing the comment to former Section 4-

406(4)).

By contrast, the statutory notice provision involved in Arkwright is not an issue in this

litigation and Arkwright provides no support for Sovereign's statute of limitations argument

here.


B.   M.G.L c. 260 § 12 Applies

Contrary to Sovereign's contention (Reply Mem. at p. 9), M.G.L. c. 260 § 12 applies not

only where the defendant has an intent to deceive the plaintiff regarding the existence of a cause

of action or to conceal the underlying wrongdoing, but also where the defendant has breached

some duty of disclosure (such as where the parties are in a fiduciary relationship or the

equivalent) or the injured party lacks access to the information establishing the nature of the

wrong (e.g., because the defendant has exclusive control over or access to the relevant facts).

See Albrecht v. Clifford, 436 Mass. 706, 715 (2002) ("The [discovery] rule, which operates to

toll a limitations period until a prospective plaintiff learns or should have learned that he has

been injured, may arise in three circumstances: where a misrepresentation concerns a fact that

was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive.").

Here, it is alleged that: (a) Sovereign participated in or facilitated Bleidt's breach of trust/fiduciary duty by wrongfully depositing funds into a non-fiduciary account even though the bank knew that he held such funds in a fiduciary capacity for the benefit of APAM's investor-clients; and (b) the bank failed to provide statements regarding Bleidt's activities to anyone but Bleidt himself despite having notice that he was violating his fiduciary duty to the investor-clients.  Thus, the investor-clients lacked access to the only information that would have revealed this wrongdoing insofar as the bank provided statements of Bleidt's account activities to him alone.

Under these circumstances, the limitations period is subject to tolling under M.G.L. c. 260 § 12, whether or not the discovery rule applies.  Indeed, the Second Circuit, in applying New York caselaw, has recognized that a bank has a duty to take affirmative steps in the face of knowledge that a customer is diverting trust funds deposited with the bank.  See, e.g., Lerner v. Fleet Bank, N.A., 459 F.3d 273, 275 (2d Cir. 2006) (noting that "whether or not it is specifically designated as a 'fiduciary' duty" owed "directly to the plaintiff," banks have a duty "to interfere" and "'prevent a diversion'" of "trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled" by a fiduciary) (citations omitted).

C.    Assuming Arguendo That the Discovery Rule Does Not Apply, Sovereign Has Miscalculated the Date On Which the Three-Year Limitations Period Would Have Ended

Sovereign also contends that the statute of limitations applicable to the Intervenors' claims ran between November 25, 2008, when the Court declined to certify a class of all

investor-client victims, and February 23, 2009, when the Intervenors filed their Complaint,

notwithstanding the fact that on November 28, 2008, they filed a Rule 24 motion to intervene

within the three-day deadline imposed by the Court (Reply Mem. at pp. 10-11).  However, for

the reasons set forth in the Intervenors' opposition memorandum, the limitations period

applicable to their claims was tolled as of the filing of the original class action complaint, even

after class certification was denied, as a result of their timely intervention in the litigation

brought by the named investor-client plaintiffs.

As an initial matter, Sovereign's contention that "the Intervenors were not established as

parties to this lawsuit until the actual filing of their Complaint" (Reply Mem. at pp. 10-11) is

entirely incompatible with the bank's previous position in moving for dismissal of that same

Complaint that the Intervenors "<u>were represented throughout this case</u>" and thus "bound by the

Court's earlier rulings and findings" and that their claims were "already disposed of . . . in the

'test case'" brought by the four named investor-client plaintiffs.  <u>See</u> Points I and II of

Sovereign's 3/30/09 Memorandum in Support of Motion to Dismiss Complaint in Intervention

(emphasis added).  As such, Sovereign should be deemed to have waived any limitations

argument based on the claim that the Intervenors were not represented in the prior action even

after filing a timely motion to intervene in that action.

At any rate, Sovereign's argument that the Intervenors' motion failed to sufficiently

specify or notify the bank of the claims to be asserted in their Complaint lacks credibility on its

face, as does Sovereign's contention that "neither the Intervenors themselves nor an attorney

representing them were a party to any motion to intervene" (because counsel for the original

investor-client plaintiffs purportedly did not represent the Intervenors) (Reply Mem. at pp. 10-

11).  As Sovereign has itself acknowledged, the claims asserted by the individual Intervenors in

their 2/23/09 Complaint were identical to those claims asserted by the named investor-client

plaintiffs.  Nor is there any basis to question the authorization to act to preserve Intervenors'

claims by filing the motion to intervene, particularly where that motion appended a list of the

proposed Intervenors (see Docket #331, under-seal Exhibit A) -- contrary to Sovereign's

assertion that the motion merely "sought leave to file a 'list of movants' at a later date" (Reply

Mem. at p. 10).

> IV.   The Intervenors Have Adequately Pled the Elements of
>        Their Chapter 93A Claim Based On Sovereign's Failure To
>        Take Appropriate Action After Discovering Bleidt's Fraud.

While Sovereign argues at length for the dismissal of the Intervenors' Chapter 93A claim

(Reply Mem. at pp. 12-17) — based on Sovereign's failure to do an appropriate investigation of

Bleidt's fraud, and failure to explore how deficiencies in the Bank's policies and procedures and

deficiencies in the Bank's handling of its employees may have allowed and facilitated the fraud –

– Sovereign's assertions regarding the sufficiency of the allegations of unfair and deceptive

practices or the need to establish injury from those practices fail to address the arguments raised

in the Intervenors' opposition papers and/or raise issues of fact that cannot be resolved on the

pleadings.

Rather than repeating the arguments contained in the Intervenors' previous

memorandum, this sur-reply will address only Sovereign's contention that Chapter 93A's

prohibition against unfair and deceptive trade practices in the course of a commercial transaction

requires the existence of a direct contractual or customer relationship between the parties.  In

fact, it has long been the rule that Chapter 93A (and in particular Section 11) does not require

privity of contract.  See Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 324 (1983).

Thus, the "trade or commerce element of 93A" does not require a direct "commercial transaction

between the parties."  M.C. Gilleran, <u>The Law of Chapter 93A</u>, § 2.1 at 11-12 (2007).  Section

1(b) of M.G.L. c. 93A defines the terms of "trade" and "commerce" expansively to cover all

business transactions concerning goods and services (including the advertising, offering and

provision of goods or services to the public) where the defendant is engaged in "trade" or

"commerce" in Massachusetts.  <u>See</u> M.G.L. c. 93A, § 1(b); Gilleran, §2.1 at 11-12.

Here, the relationship between the parties was of a commercial nature for purposes of

Chapter 93A.  Indeed, Sovereign's argument that the Intervenors fail to plead a direct

commercial business transaction or relationship mirrors the defense argument rejected in

<u>Reisman v. KPMG Peat Marwick LLP</u>, 57 Mass. App. Ct. 100, <u>review den.</u>, 439 Mass. 1105

(2003). There, the Massachusetts Court of Appeals reversed the trial court's ruling that

shareholders in a transaction "did not have a significant business relationship" with KPMG.  The

appellate court held that the relationship between KPMG and the shareholders was "more than

trivial."  The accountants were "in direct contact" with the shareholders during the stock-for-

stock merger negotiations, assigned a partner to advise the shareholders, were "responsible for

the structure of the transaction and reviewed all documents relating to it."  <u>Id</u>.  <u>See</u> <u>also</u>

<u>Manhattan Tops USA, Inc. v. Kenneth Leventhal & Co.</u>, 1995 Mass. Super. LEXIS 50, at *10

(Mass. Super. Ct. Dec. 1995) ("business relationship" could be found where "professional

advisors" "intended potential investors, such as the plaintiffs ... to rely on their bottom line

valuation").  The Intervenors meet the requirements for this cause of action.

Accordingly, even in the absence of a direct commercial transaction between the parties,

a Chapter 93A action can be brought against a party with which the plaintiff had only an indirect

legal relationship, such as here where the Intervenors (as "represented person[s]" within the

meaning of Section 3-307(b)) provided funds to their fiduciary or agent that Sovereign then took

(and may continue to take) for deposit despite notice that its practices enabled such funds to be fraudulently diverted by that fiduciary.  See Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass. App. Ct. 545, 551 (although defendants did not sign an agreement with plaintiffs, they took an active role in the dealings with plaintiff by fraudulently negotiating and inducing the contract and orchestrating misrepresentations).

In short, for the reasons previously stated and those set forth herein, the Intervenors have alleged facts that, if established, would make Sovereign's conduct subject to M.G.L.c. 93A, and the Bank's motion to dismiss their Chapter 93A claim should be denied.

Dated:    April 8, 2010

Respectfully submitted,


____/s/ Melanie L. Oxhorn_____             ____/s/ David J. Fine_____
Melanie L. Oxhorn, BBO No. 145458               David J. Fine, BBO No. 165120
450 E. 63rd St., #6C                            Law Offices of David J. Fine
New York, NY 10065                              1 State Street, Suite 1500
(212) 593-0172                                  Boston, MA 02109
                                                 (617) 720-2942

Attorneys for Intervenor Plaintiffs



Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated:    April 8, 2010

                                            ____/s/ David J. Fine_____
                                            David J. Fine, BBO No. 165120