## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DAVID J. FINE, in his capacity as** ) | |
| **Court-Appointed Ancillary Receiver** ) | |
| **of Bradford C. Bleidt and Allocation** ) | |
| **Plus Asset Management Company, Inc.,** ) | |
| **et al.,** ) | |
|       **Plaintiffs,** ) | |
| ) | |
| **JOEL ABRAMSON, et al.,** ) | |
|       **Intervenor-Plaintiffs,** ) | |
| ) | **Civil Action No. 06cv11450-NG** |
|     **v.** ) | |
| ) | |
| **SOVEREIGN BANK,** ) | |
|       **Defendant.** ) | |

**GERTNER, D.J.:**

### MEMORANDUM & ORDER
July 28, 2010

## I.    INTRODUCTION

This action was brought by individuals who lost money in a fraud perpetrated by

Bradford Bleidt, their investment advisor.[1]  See Fine v. Sovereign Bank, 671 F. Supp. 2d 219,

222-24 (D. Mass. 2009).  Bleidt carried out his fraud in part through a business operating

account that he maintained at a Boston branch of defendant Sovereign Bank  ("Sovereign").  The

original plaintiffs in this lawsuit sought to maintain a class action against Sovereign on behalf of

Bleidt's investor-clients.  This Court denied class certification on November 25, 2008.  The

members of the putative class then moved to intervene in this action.  (Mot. to Intervene,

document #331.)  The Court granted this motion on December 1, 2008.  After the Court granted

the intervenors' requests for extensions of time to file their complaint in intervention, they

---

[1] While the ancillary receiver of Allocation Plus Asset Management Company, Inc., Bleidt's investment-advisory firm, is also a party to this action, the motions resolved in this order do not implicate the ancillary receiver.

submitted their complaint on February 23, 2009.  (Intervenors' Compl., document #425.)  The

intervenors have since amended their complaint on two separate occasions.  (Intervenors' Am.

Compl., document #479; Intervenors' 2d Am. Compl., document #485.)

Sovereign now seeks to dismiss certain of the intervenors' claims.  (Def.'s Mot. to

Dismiss, document #490.)  First, it moves to dismiss the intervenors' claims with respect to

thirty-seven checks that the intervenors allege Sovereign accepted with notice of Bleidt's

fiduciary breaches and, at least in some cases, without proper indorsements.  (The thirty-seven

checks are outlined in a separate spreadsheet, which is attached to this decision.)  Second,

Sovereign moves to dismiss the intervenors' newly alleged claim under Mass. Gen. Laws ch.

93A that Sovereign acted unfairly and deceptively by failing to review its internal policies and

procedures and take appropriate remedial actions after Bleidt's fraud came to light.

The Court denies Sovereign's motion to dismiss (document #490) insofar as it seeks

dismissal of the intervenors' claims with respect to the thirty-seven challenged checks.

However, the Court grants Sovereign's motion to dismiss with respect to the intervenors' newly

asserted ch. 93A claim since the intervenors have not sufficiently alleged that Sovereign's post-

fraud failure to investigate has injured them.  The Court also grants the intervenors' motion to

amend their complaint (document #495) to add two new parties, to clarify that certain

intervenors are suing in both an individual and representative capacity, and to allege that several

intervenors were customers of Sovereign during the time period of Bleidt's fraud.

## II.   MOTION TO DISMISS STANDARD

Sovereign contends that the intervenors have failed to state a claim upon which relief can

be granted with respect to the thirty-seven challenged checks and Sovereign's conduct after

Bleidt's fraud was discovered.  See Fed. R. Civ. P. 12(b)(6).  In ruling on Sovereign's motion, the Court must accept as true all well-pleaded facts in the intervenors' complaint and must draw all reasonable inferences from these facts in their favor.  Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir. 2009).

### III.   THE INTERVENORS' CLAIMS WITH RESPECT TO THE THIRTY-SEVEN CHALLENGED CHECKS

Sovereign lodges three challenges against the intervenors' attempt to state claims with respect to the thirty-seven checks at issue: (1) for some checks, the payee of the check is not a party; (2) some of the checks do not qualify as "third-party checks";[2] and (3) some of the intervenors' claims are barred by the applicable three-year statute of limitations.

Sovereign's first challenge is obviated by the intervenors' proposed amendment to their complaint, which adds two new parties and clarifies that certain intervenors are bringing claims in both an individual and representative capacity.  (Intervenors' Mot. to Amend, document #495.)  The intervenors filed their motion to amend only about a year after they submitted their original complaint and while discovery regarding their claims was still ongoing.  In light of the Federal Rules of Civil Procedure's liberal amendment policy, the Court grants this motion to amend.  See Fed. R. Civ. P. 15(a)(2) ("[A] court should freely give leave [to amend] when justice so requires.").  Accordingly, the Court rejects Sovereign's challenge to the intervenors' claims based on its argument that the payees of certain checks are not parties.

Sovereign's second challenge (i.e., some of the thirty-seven checks do not qualify as "third-party checks") consists of three sub-arguments.  First, Sovereign contends that Mass. Gen.

---

[2] "A 'third-party check' is a check that has been endorsed by the payee and transferred to a third-party." Fine, 671 F. Supp. 2d at 223 (quoting Black's Law Dictionary 1617 (9th ed. 2009)).

Laws ch. 106, § 3-420(a) prohibits the intervenors from asserting conversion claims with respect to four checks that were drawn by an intervenor. <u>See</u> Mass. Gen. Laws ch. 106, § 3-420(a) ("An action for conversion of an instrument may not be brought by . . . the issuer . . . of the instrument . . . ."). Second, Sovereign argues that the intervenors cannot assert claims with respect to instruments on which no intervenor is named as a payee. Finally, it contends that the intervenors cannot assert claims with respect to checks on which an intervenor is simply named as an alternative payee.

Dismissing the intervenors' claims on any of these grounds would be inappropriate at this stage in the litigation. The intervenors have properly alleged that they have a legally cognizable interest in the checks at issue and that Sovereign accepted these checks for deposit with notice of Bleidt's fiduciary breaches and, in some cases, without proper indorsements. These allegations are sufficient to survive a motion to dismiss. The intervenors' right to assert claims with respect to particular checks may depend on how those checks were indorsed or on the particular wording contained on the checks. The Court notes that discovery regarding these matters is still ongoing.

Nevertheless, the Court makes the following observations to provide greater guidance to the parties regarding the legal framework within which the case will likely be litigated. First, the Court rejects Sovereign's contention that a drawer can never assert a claim against a depositary bank that is not also the check's drawee. While the Court recognizes that Mass. Gen. Laws ch. 106, § 3-420(a) seems to expressly prohibit a drawer from ever raising a claim of conversion, the framers of Mass. Gen. Laws ch. 106, 3-307(b)(3)-(4) appear to have envisioned a drawer being able to bring some cause of action against a depositary bank that takes a check with notice of a fiduciary breach. Perhaps that cause of action is better labeled "breach of fiduciary duty" than

"conversion."  See Lattuca v. Robsham, 812 N.E.2d 877, 882 (Mass. 2004) (noting that "breach

of fiduciary duty" is a recognized cause of action in Massachusetts sounding in tort).  But

regardless of the label used, section 3-307 sets forth standards for determining whether a check,

including one "issued by the represented person," is taken with notice of a fiduciary breach.

Mass. Gen. Laws ch. 106, § 3-307(b)(3)-(4).  Section 3-307(b)(1) explains that notice of a

fiduciary breach "is notice of the claim of the represented person," and such notice disqualifies

the taker from attaining the status of a holder in due course, making it susceptible to the

represented person's claim.[3]  Id. cmt. 2; see also Mass. Gen. Laws ch. 106, § 3-302(a)(2)(v);

Mass. Gen. Laws ch. 106, § 3-306.

        To be sure, it is not entirely clear what cause of action the framers of section 3-307

envisioned a potential plaintiff bringing when an instrument is taken with notice of a fiduciary

breach.  See Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601, 621 (7th Cir. 2001);

2 James J. White & Robert S. Summers, Uniform Commercial Code §§ 18-4, 19-5 (5th ed.

2009).  What is clear, however, is that the section contemplates a drawer of a check being able to

assert *some* claim against a depositary bank if the requirements of either section 3-307(b)(3) or

3-307(b)(4) are met.[4]

_____

        [3] While the intervenors also allege that Sovereign is liable under Restatement (Second) of Trusts § 324 for
participating in a breach of trust, it is unclear to the Court whether a bank's potential liability under this section is
any broader than it would be under the reading of Mass. Gen. Laws ch. 106, §§ 3-302, 3-306, and 3-307 set forth in
the paragraph above.

        [4] The Court recognizes that the Massachusetts Supreme Judicial Court has stated that "a drawer has no
cause of action against a collecting bank."  Arkwright Mut. Ins. Co. v. State St. Bank & Trust Co., 703 N.E.2d 217,
218 n.3 (Mass. 1998).  Arkwright, however, cited Stone & Webster Engineering Corp. v. First National Bank &
Trust Co. of Greenfield, 184 N.E.2d 358 (Mass. 1962), in support of this proposition, and Stone & Webster merely
set forth the rule, now codified in section 3-420(a), that "the drawer of a check with a forged indorsement [cannot]
assert rights against a depositary bank that took the check," Mass. Gen. Laws ch. 106, § 3-420 cmt. 1; see also Stone
& Webster, 184 N.E.2d at 360-64.  Neither Arkwright nor Stone & Webster considered the interplay between
sections 3-302, 3-306, and 3-307.

The Court further notes that it finds the rationale of <u>American National Insurance Co. v.</u> <u>Citibank, N.A.</u>, 543 F.3d 907 (7th Cir. 2008), to be persuasive.  It is not sufficient for the intervenors to assert that they "beneficially owned" certain checks.  (Intervenors' Opp'n 6, document #494.)  While the intervenors cite <u>Clients' Security Fund v. Goldome</u>, 560 N.Y.S.2d 84, 87 (N.Y. Sup. Ct. 1990), for the proposition that "the 'rightful owner' of a check, although not named as payee, has standing to sue," this statement from <u>Goldome</u> is overly broad. Obviously, if I promise to transfer my next paycheck to a creditor in consideration for him refraining from immediately collecting on an overdue loan, the creditor cannot sue my bank for conversion if I decide to deposit the check into my bank account instead of indorsing it over to the creditor.  The creditor's claim is against me, not my bank.  To assert claims under the Uniform Commercial Code ("U.C.C."), the intervenors must show that they have some legally cognizable interest in the checks themselves, not merely in the funds backing the checks. <u>American Nat'l</u>, 543 F.3d at 910.

The intervenors' task of proving their interest in some of the challenged checks should be simple.  Several checks were made payable to one of Bleidt's companies "for the benefit of" one of the intervenors.  Mass. Gen. Laws ch. 106, § 3-110(c)(2)(ii) states that if an instrument is payable to "a person described as agent or similar representative of a named or identified person, the instrument is payable to the *represented person*, the representative, or a successor of the representative."  Mass. Gen. Laws ch. 106, § 3-110(c)(2)(ii) (emphasis added).  In addition, Mass. Gen. Laws ch. 106, § 3-307(b)(1)-(2) states that a taker of an instrument may have knowledge of a *represented person's claim* to the instrument or its proceeds in cases where the instrument is payable *only to the fiduciary as such*, not to the represented person himself.  If a

jury finds that the language of these checks demonstrates that they were made payable to one of Bleidt's companies in its capacity as agent of an intervenor, then the intervenors can assert claims with respect to the checks.

The intervenors may also have viable claims with respect to checks on which they are listed as an alternative payee if the checks were received by the intervenors or were indorsed in their names.[5]  However, the intervenors will not be able to prevail on their claims with respect to checks on which they are not named as a drawer, payee, or indorsee.[6]  See American Nat'l, 543 F.3d at 910.

Finally, the Court concludes that a discovery rule applies to the intervenors' claims.[7]  No Massachusetts court has expressly addressed the issue of whether claims raised under Article 3 of the U.C.C. are amenable to a discovery rule.  See LePage v. Shawmut Bank, N.A., No. 98-P-1836, 735 N.E.2d 1274, 2000 WL 1476119, at *2 n.2 (Mass. App. Ct. July 21, 2000) (unpublished table decision) (noting that the court did not need to reach the question "of whether the discovery rule is applicable to conversion claims under the Uniform Commercial Code" because the plaintiff could not prevail even if a discovery rule applied).  The Court must therefore make an informed prophecy of how the Massachusetts Supreme Judicial Court ("SJC")

---

[5] Although the Court is not aware of any Massachusetts cases that have directly addressed the issue, it agrees with Sovereign that when multiple payees are separated by spaces or stacked on separate lines without the use of any connecting punctuation or words, the check is payable alternatively.  See Pelican Nat'l Bank v. Provident Bank of Md., 849 A.2d 475, 483 (Md. 2004); see also Mass. Gen. Laws ch. 106, § 3-110(d) (setting forth the default rule that if an instrument is ambiguous as to whether it is payable in the alternative, it is payable alternatively).

[6] The Court here addresses only the intervenors' claims with respect to the instruments themselves.  It does not reach the question of whether the intervenors can recover the funds backing these checks under other theories, such as those set forth in Counts I, III, IV, and V of their second amended complaint.

[7] Under a discovery rule, a cause of action "does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the factual basis for a cause of action."  Patsos v. First Albany Corp., 741 N.E.2d 841, 846-47 (Mass. 2001).

would decide the issue if confronted with it.  In carrying out this task, the Court may take into

account case law from other jurisdictions, "the collected wisdom found in learned treatises," and

relevant policy considerations.  <u>Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.</u>, 547 F.3d

48, 51-52 (1st Cir. 2008).

The parties appear to agree that the intervenors' claims are governed by Mass. Gen. Laws

ch. 106, § 3-118(g), which requires any action based on the conversion of a negotiable

instrument to "be commenced within three years after the cause of action accrues."  Nothing in

the text of section 3-118(g) prohibits the Court from adopting a discovery rule.  The official

commentary to the provision makes clear that it "does not define when a cause of action

accrues."  Mass. Gen. Laws ch. 106, § 3-118 cmt. 1.  Furthermore, the section takes no position

regarding "the circumstances under which the running of a limitations period may be tolled."  <u>Id.</u>

Section 3-118 thus accords with the Massachusetts legislature's general practice of

leaving it to the judiciary to determine when a cause of action accrues.  <u>See</u> <u>White v. Peabody</u>

<u>Constr. Co.</u>, 434 N.E.2d 1015, 1020 (Mass. 1982).  In answering this question, Massachusetts

courts have been "guided by the basic principle that 'a cause of action accrues on the happening

of an event likely to put the plaintiff on notice.'"  <u>Id.</u> (quoting <u>Hendrickson v. Sears</u>, 310 N.E.2d

131, 135 (Mass. 1974)).  As a result, Massachusetts applies the discovery rule to a wide-range of

claims, including professional and medical malpractice,[8] misrepresentation,[9] and negligent and

intentional infliction of emotional distress.[10]  Importantly, Massachusetts has even applied the

_____

[8] <u>See</u> <u>Riley v. Presnell</u>, 565 N.E.2d 780 (Mass. 1981); <u>Franklin v. Albert</u>, 411 N.E.2d 458 (Mass. 1980);
<u>Hendrickson v. Sears</u>, 310 N.E.2d 131 (Mass. 1974).

[9] <u>See</u> <u>Friedman v. Jablonski</u>, 358 N.E.2d 994, 997 (Mass. 1976); <u>McEneaney v. Chestnut Hill Realty Corp.</u>,
650 N.E.2d 93, 97 (Mass. App. Ct. 1995).

[10] <u>See</u> <u>Phinney v. Morgan</u>, 654 N.E.2d 77 (Mass. App. Ct. 1995).

discovery rule in "commercial" cases involving claims of breach of contract and breach of express warranties.[11]  Massachusetts's adoption of the discovery rule has been so expansive that a recent case seemed to state that, as a general rule, statutes of limitations begin to run in Massachusetts "when the plaintiff learned or should reasonably have learned that he has been harmed."  Moelis v. Berkshire Life Ins. Co., 887 N.E.2d 214, 221 (Mass. 2008).

Massachusetts's broad application of the discovery rule reflects its recognition of "the unfairness of a rule that holds that the statute of limitations has run even before a plaintiff knew or reasonably should have known that she may have been harmed by the conduct of another."  Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 740-41 (Mass. 1990).  Thus, Massachusetts generally adheres to the principle that "a plaintiff should be put on notice before his claim is barred."  Franklin v. Albert, 411 N.E.2d 458, 463 (Mass. 1980).

While most jurisdictions that have considered the issue have held that a discovery rule does not apply to conversion claims asserted under the U.C.C. in the absence of evidence that the defendant fraudulently concealed the plaintiff's cause of action, the Court believes that, if squarely confronted with the issue, the SJC would join the minority of jurisdictions that have reached the opposite result.  See Menichini v. Grant, 995 F.2d 1224, 1229-32 & nn.7-8 (3d Cir. 1993) (citing cases on both sides of the issue and ultimately refusing to apply the discovery rule). The debate is waged in terms of competing policy concerns.  Weighing against applying a discovery rule are "the important UCC policies of negotiability, finality, and uniformity."  Id. at 1229.  Also, courts have stressed that the victim of conversion is often in the best position to

---

[11]  See Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, 489 N.E.2d 172, 176-77 (Mass. 1986) (applying a discovery rule to a claim that the defendant breached an express warranty); Bovarnick v. Fleet Nat'l Bank, 840 N.E.2d 549, 552 n.6 (Mass. App. Ct. 2006) (applying a discovery rule to a common-law breach of contract claim based on a bank's failure to redeem non-negotiable bank certificates not covered by the U.C.C.).

quickly and easily detect the loss and take appropriate action, which militates against applying a discovery rule to such a claim.  See, e.g., Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union, 678 N.E.2d 322, 326 (Ill. App. Ct. 1997).  In this sense, the majority rule's refusal to apply a discovery rule to claims of conversion of negotiable instruments reflects a "presumption that property owners know where their property is located."  Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 478 (Iowa 1990).  On the other side of the scale is the seeming unfairness of a rule that could arbitrarily deny relief to a plaintiff who could not reasonably have been expected to have any inkling of his injury until years after the wrongful act occurred.  See Stjernholm v. Life Ins. Co. of N. Am., 782 P.2d 810, 811 (Colo. App. 1989).

While the issue is hardly free from doubt, the Court concludes that the SJC would not afford decisive weight to the argument that a discovery rule should be rejected since certainty and finality are of paramount importance in commercial transactions.  Instead, Massachusetts's expansive adoption of the discovery rule indicates that the SJC would likely agree with the Colorado Court of Appeals that when "the rights of an individual to obtain redress . . . come into conflict with the interests of the flow of commercial transactions," the judiciary should favor the course that protects individual rights.  Id.

Since the Court holds that a discovery rule applies to the intervenors' claims, Sovereign's motion to dismiss a portion of their claims on statute of limitations grounds must be denied.  The intervenors allege that they did not have notice of Bleidt's fraud until he confessed his crimes to the Securities and Exchange Commission in November 2004, and the original plaintiffs' complaint was brought less than two years later on August 17, 2006.  Whether the intervenors should have known of their claims against Bleidt and Sovereign before November 2004 is a

question of fact to be decided by a jury.  See Taygeta Corp. v. Varian Assocs., Inc., 763 N.E.2d

1053, 1063 (Mass. 2002) ("In most instances, the question when a plaintiff knew or should have

known of its cause of action is one of fact that will be decided by the trier of fact.").

## IV.    THE INTERVENORS' CH. 93A CLAIM

The intervenors' second amended complaint asserts a new claim under Mass. Gen. Laws

ch. 93A that was not raised by the original plaintiffs in this action.  The intervenors allege that

Sovereign acted unfairly and deceptively by failing to review its internal policies and procedures

and take appropriate remedial actions after Bleidt's fraud came to light.  (2d Am. Compl. ¶ 153,

document #485.)  The Court agrees with Sovereign that this newly asserted ch. 93A claim must

be dismissed because the intervenors have not sufficiently alleged that Sovereign's post-fraud

failure to investigate has caused them any injury.[12]

Two sections of ch. 93A create individual causes of action.  Section 11 applies to

plaintiffs who are "engag[ed] in the conduct of any trade or commerce."  Section 9 applies to all

other plaintiffs.  To prevail in an action under section 9, a plaintiff must show that he was injured

by the defendant's allegedly unfair or deceptive act or practice.  Mass. Gen. Laws ch. 93A, §

9(1).  While section 11 only permits a plaintiff to obtain monetary damages if the plaintiff can

prove that he has suffered a "loss of money or property," a plaintiff suing under section 11 may

obtain injunctive relief if he can show that an unfair or deceptive act or practice "may have the

effect of causing [him to lose] money or property," even if the loss has not yet occurred.  Mass

Gen. Laws ch. 93A, § 11.

---

[12] While the intervenors' second amended complaint does baldly assert that they "have sustained severe injury, loss and damage" from Sovereign's violations of ch. 93A, (2d Am. Compl. ¶ 151), such an unadorned, conclusory allegation is not sufficient to survive a motion to dismiss.  See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514-16 (1st Cir. 1988).

Although the intervenors' complaint invokes both sections 9 and 11, their claims almost certainly fall under section 9.  The intervenors' complaint does not allege that they were engaged in "trade" or "commerce" as those terms are defined in Mass. Gen. Laws ch. 93A, § 1(b).  The intervenors were not acting in a "business context" when they entrusted money to Bleidt to invest on their behalf.  52 Michael C. Gilleran, <u>Massachusetts Practice Series: The Law of Ch. 93A</u> § 7.5, at 255 (2d ed. 2007) ("[A] plaintiff must bring an action under § 9 where the plaintiff is either an individual not acting in a business context, or an individual carrying on business but the 93A violation did not occur in connection with the plaintiff's business.").  Instead, they were consumers participating in a commercial transaction on a nonprofessional basis for their own private benefit.  <u>Id.</u> at 254-55; <u>see also</u> <u>Lantner v. Carson</u>, 373 N.E.2d 973, 976 (Mass. 1978). Indeed, the fact that the original plaintiffs served Sovereign with a demand letter before commencing their action suggests that these plaintiffs recognized their claims as arising under section 9.  <u>See</u> Mass. Gen. Laws ch. 93A, § 9(3).  Section 11, unlike section 9, does not require a plaintiff to serve a demand letter before bringing suit.  Gilleran, <u>supra</u>, § 8.6, at 283.

The intervenors' newly alleged ch. 93A claim cannot be asserted under section 9 because they have not sufficiently alleged that they have been injured as a result of Sovereign's failure to conduct an appropriate investigation in the wake of Bleidt's fraud.  While the intervenors were certainly harmed by Bleidt's defalcations, they fail to explain how they have been injured by Sovereign's conduct *after Bleidt's fraud came to light*.  <u>See</u> <u>Rule v. Fort Dodge Animal Health, Inc.</u>, 607 F.3d 250, 253-55 (1st Cir. 2010) (holding that a plaintiff who purchased and used a heartworm drug for dogs with undisclosed safety issues could not recover under ch. 93A since her dog suffered no harm from the drug); <u>Roberts v. Enter. Rent-A-Car Co. of Boston</u>, 840

N.E.2d 541, 543-44 (Mass. 2006) (holding that plaintiff could not have been injured by a rental car company's failure to appropriately display statutorily required language regarding collision damage waivers when he did not purchase the waiver); <u>Hershenow v. Enter. Rent-A-Car Co. of Boston</u>, 840 N.E.2d 526, 533 (Mass. 2006) ("[A] plaintiff seeking a remedy under [section 9] must demonstrate that even a per se deception caused a loss.").  For example, none of the intervenors asserts that he has lost money in another fraud perpetrated through a Sovereign bank account.

Even if the intervenors could bring their claims under section 11, dismissal would still be warranted.  The intervenors' complaint does not explain how Sovereign's failure to investigate "may have the effect of causing [them to lose] money or property."  Mass. Gen. Laws ch. 93A, § 11.  They do not, for example, allege that they are currently entrusting money to a fiduciary who deposits funds into an account at Sovereign.

Put simply, the intervenors' newly alleged ch. 93A claim constitutes a purely vicarious suit by self-appointed attorneys general, which the statute does not allow.  <u>Leardi v. Brown</u>, 474 N.E.2d 1094, 1102 (Mass. 1985).

## V.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1.    Sovereign's Motion to Dismiss Certain Claims in Second Amended Complaint in Intervention (**document #490**) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is granted with respect to the intervenors' newly alleged ch. 93A claim.  It is denied insofar as it seeks to dismiss certain claims raised in Counts II and VI of the intervenors' second amended complaint.

2.      Intervenors' Motion to Amend Complaint (**document #495**) is **GRANTED**.

3.      The intervenors shall file an amended complaint reflecting the amendments proposed in the motions at docket entries ## 495 and 507 within five business days of the date of this order.  Sovereign shall bear its own costs in responding to the intervenors' amended complaint.

4.      Linda Jean Anderson and Karen Lee Anderson, who are joining this litigation in their capacity as co-executrices of the Estate of Norman W. Anderson by virtue of the intervenors' amendment, shall make initial disclosures within ten business days of the date of this order.

**SO ORDERED.**

**Date:  July 28, 2010**                    /s/ Nancy Gertner
                                            **NANCY GERTNER, U.S.D.C.**

# Chart of the Thirty-Seven Checks Challenged by Sovereign

---

**KEY TO CHART**

- **Shorthand Name for Check (Column A):** Sets forth the shorthand name for the check adopted by the parties.
- **Check Date (Column B):** States the date written on each check.
- **Date Deposited Into '545 Account (Column C):** States the date on which the check was deposited into the '545 account.
- **Drawer (Column D):** Sets forth the drawer of each check.
- **Payee(s) (Column E):** Sets forth the checks' payees.
- **Amount (Column F):** States the amount of each check.
- **Not Party (Column G):** Notes with an "X" each check to which Sovereign objects on the grounds that no individual with an interest in the check is a party to this action.
- **Not 3PC (Plaintiff = Drawer) (Column H):** Notes with an "X" each check to which Sovereign objects on the grounds that a plaintiff-intervenor is the drawer of the check. ("Not 3PC" indicates that Sovereign objects to the check on the grounds that it is "not a third-party check.")
- **Not 3PC (Plaintiff Not Payee, No Evidence of Fiduciary Relationship on Check) (Column I):** Notes with an "X" checks that do not name an intervenor as a payee and do not contain language suggesting that the checks were written "for the benefit of" an intervenor.
- **Not 3PC (Plaintiff Not Payee, But Evidence of Fiduciary Relationship on Check) (Column J):** Notes with an "X" checks that do not name an intervenor as a payee but do contain language indicating that the checks were written "for the benefit of" an intervenor.
- **Not 3PC (Alternative Payees) (Column K):** Notes with an "X" checks on which an intervenor is named as an alternative payee.
- **Statute of Limitations (Column L):** Notes with an "X" checks to which Sovereign objects on statute of limitations grounds.
- **Comments (Column M):** Sets forth comments regarding the manner in which Sovereign's objections to the check were categorized.

<br>

    If a row is highlighted in purple, the check associated with the row was deposited before 11/3/02.

<br>

    If a row is highlighted in blue, the check associated with the row was deposited between 11/3/02 and 2/1/03.

## Chart of the Thirty-Seven Checks Challenged by Sovereign

| Shorthand Name for Check | Check Date | Date Deposited into '545 Account | Drawer | Payee(s) | Amount | Not Party | Not 3PC (Plaintiff Drawer) | Not 3PC (Plaintiff Not Payee, No Evidence of Fiduciary Relationship on Check) | Not 3PC (Plaintiff Not Payee, But Evidence of Fiduciary Relationship on Check) | Not 3PC (Alternative Payee) | Statute of Limitations | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bledt 4 | 1/8/2002 | 2002 | Keyport Life Ins. | Financial Perspectives, Inc. (next line) Fbo Mary Frances Bledt | $ 36,141.44 | | | | X | | X | |
| McCarthy 2 | 11/22/2000 | 1/24/2000 | Jackson National Life | Michael J. McCarthy | $ 272,880.66 | X | | | | | X | |
| Parker, Elaine 4 | 4/17/2001 | 4/19/2001 | Paine Webber | Elaine Parker | $ 40,405.47 | | | | | | X | |
| Pestana 1 | 6/29/2001 | Jul-01 | U.S. Treasury | Manuel & Florence Pestana | $ 16,823.74 | | | | | | X | |
| Parker, Elaine 2 | ? | 7/2/2001 | Paine Webber | Elaine Parker | $ 17,766.00 | | | | | | X | |
| Landry, Richard | 8/8/2001 | 8/15/2001 | Fidelity | Richard E. Landry, Sr. | $ 67,892.52 | | | | | | X | |
| Landry, Maureen | 8/21/2001 | 8/29/2001 | Fidelity | Maureen F. Landry | $ 26,288.88 | | | | | | X | |
| McCarthy 1 | 8/31/2001 | 9/10/2001 | U.S. Treasury | Michael & Sandra McCarthy | $ 10,542.00 | | | | | | X | |
| Gaffney 1 | 10/31/2001 | Oct-01 | Jaime & William Gaffney | National Financial Services | $ 9,553.96 | | X | | | | X | |
| Leger 1 (MacFarlane) | 10/16/2001 | 11/21/2001 | Bell South Corp. | G. Sydney MacFarlane | $ 16,240.49 | | | | | | X | |
| Leger 2 (Nash) | 11/19/2001 | Nov-01 | Golden Fleece Lodge | Nash Charity Scholarship Fund | $ 1,000.00 | | | | | | X | |
| Bledt 1 | 11/15/2001 | 11/20/2001 | Scudder Tech. Fund | Estate of Mary A. Gass (next line) Financial Perspectives | $ 55,942.21 | X | | | | X | X | |
| Bledt 2 | ? | 12/24/2001 | Affiliated Fund Class A | Mary Frances Bledt, Exec. Estate of Mary Alice Gass (next line) Financial Perspectives | $ 2,361.71 | X | | | | X | X | |
| Parker, Elaine 3 | ? | 12/24/2001 | Warren Bank | Elaine Parker | $ 6,019.28 | | | | | | X | |
| Bledt 3 | 1/7/2002 | 1/15/2002 | Keyport Life Ins. | Financial Perspectives, Inc. (next line) Fbo Mary Frances Bledt | $ 41,267.47 | | | | X | | X | |
| Iatrida 1 | 2/6/2002 | 4/8/2002 | Savings Bank Employees | National Financial Services (f/b/o (next line) Anna D. Iatrida) | $ 17,134.65 | | | | X | | X | |
| Dutch 1 | 4/1/2002 | 4/26/2002 | Lori I. Dutch (Dutch) | Financial Perspectives | $ 1,060.00 | | X | | X | | X | |
| Tully 1 | ? | 5/6/2002 | Paychex Retirement Services | National Financial FBO Tully, Marilyn | $ 56,830.94 | | | | X | | X | |
| Cashins 1 | 5/21/2002 | 5/24/2002 | Martha A. Cashins | Financial Perspectives | $ 3,500.00 | | X | | | | X | |
| McCarthy 5 | 6/4/2002 | 6/5/2002 | Skandia | Sandra McCarthy | $ 59,527.35 | | | | X | | X | |
| Willems 1 | ? | 6/5/2002 | Merrimack Valley Federal Credit Union | NFS/FMTC/APAM (next line) FBO Richard L. Willems | $ 125,000.00 | | | | X | | X | |
| Morris 1 | ? | 6/6/2002 | Rebecca Morris | Financial Perspectives | $ 20,000.00 | | X | | | | X | |
| Parker, Elaine 1 | ? | 9/3/2002 | Edward Lynam | Elaine Parker | $ 228,120.21 | | | | | | X | |
| Turner 1 | 11/1/2002 | 11/4/2002 | John Hancock | NFS/APAM (next line) FBO Nathan S. Turner | $ 264,438.82 | X | | | X | | X | |
| Turner 2 | 11/11/2002 | 11/21/2002 | Charles Schwab | Louise Turner | $ 7,487.19 | | | | | | X | |
| McCarthy 3 | 12/1/2002 | 12/7/2002 | Verizon | National Financial Service SRV/A COS Of (next line) H/A of Sandra J. ... | $ 75,630.00 | | | | X | X | X | Note: An "X" appears in both Columns J & K because this check was difficult to categorize |
| McCarthy 4 | 12/1/2002 | 12/7/2002 | Sandra McCarthy | Robert McCarthy | $ 8,000.00 | X | | | | | X | |
| Leger 3 (Nash) | 11/28/2002 | 12/10/2002 | Golden Fleece Lodge | Nash Charity/Scholarship Fund | $ 1,000.00 | | | | | | X | |
| Boeri 1 | 1/14/2003 | 1/22/2003 | John Hancock | Louis Boeri | $ 2,057.00 | | | | | | X | |
| Parker, Richard 1 | 1/9/2003 | 1/24/2003 | A. Troiano | Richard & Sarah Parker | $ 20,000.00 | | | | | | X | |
| Francis 1 | 3/31/2004 | 4/5/2004 | MIT Retirement Plan | NFS/APAM (next line) FBO Joan Francis | $ 219,741.19 | | | | X | | | |
| Martin 1 | 6/21/2004 | 6/25/2004 | Variable Annuity Life | NFS/APAM (next line) FBO Priscilla A. Martin | $ 34,619.40 | | | | X | | | |
| Tompkins 1 | 7/21/2004 | 7/23/2004 | Smith Barney | Financial Perspectives Planning | $ 65,703.26 | | X | | | | | |
| Tompkins 3 | 8/3/2004 | 8/6/2004 | Smith Barney | Financial Perspectives Planning (next line) Services, Inc. | $ 5,109.12 | | X | | | | | |
| Anderson 1 | 9/24/2004 | 9/30/2004 | Merrill Lynch | Norman W. Anderson | $ 85,656.67 | X | | | | | | |
| Gilbert 1 | 12/16/2003 | 12/16/2003 | GE Corp. Benefits | National Financial Services LLC | $ 98,297.25 | | X | | | | | |
| Martin 2 | 7/1/2004 | ? | National Grand Rapid Bank | APAM for the benefit of Priscilla Martin | $ 60,000.00 | | | | X | | | |