**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DAVID J. FINE, in his capacity as Court-Appointed Ancillary Receiver of Bradford C. Bleidt and Allocation Plus Asset Management Company, Inc., et al.,** <br>     Plaintiffs, <br><br> **JOEL ABRAMSON, et al.,** <br>     Intervenor-Plaintiffs, <br><br> v. <br><br> **SOVEREIGN BANK,** <br>     **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. 06cv11450-NG |

**GERTNER, D.J.:**

**MEMORANDUM & ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**
May 27, 2011

Bradford Bleidt was an investment advisor. From the mid-1980s until he confessed his crimes to the SEC on November 11, 2004, he swindled 125 of his clients out of approximately $32.6 million. (Intervenors' 2d Am. Compl. ¶¶ 101, 106, document #485.) Bleidt conducted his ponzi scheme through his bank account (the "'545 account") at Sovereign Bank ("defendant" or "Sovereign"). An investor client would send him a check for investment, he would deposit the check in the '545 account, and then he would misappropriate the client's funds by diverting them to other accounts that he maintained at Sovereign. Trial Tr. 57-58, Dec. 11, 2008.[1] The receiver for Bleidt's wholly owned company and his former clients brought this action against Sovereign alleging that it is partly responsible for the fraud.

---

[1] There are of course other ways that Bleidt committed his fraud. The facts of this case have been discussed at length elsewhere. See Fine v. Sovereign Bank, 671 F. Supp. 2d 219, 222-24 (D. Mass. 2009) and incorporated here.

The litigation has now spanned almost six years. The initial plaintiffs filed their suit on August 17, 2006. They sought to maintain a class action against Sovereign on behalf of Bleidt's investor-clients, alleging aiding and abetting a breach of fiduciary duty, conversion, negligence, and unfair and deceptive business practices. I denied class certification on November 25, 2008. I denied in part and reserved in part the plaintiffs' first motion for summary judgment on August 8, 2008 and denied both parties' motions for summary judgment on November 26, 2008. See Mem & Order Pl.'s Mot. Summ. J. (document #209); Mem. & Order Mot. Summ. J. (document #329).

The case proceeded to trial for the intervenor and four investor-clients: Nancy and Langdon F. Lombard ("the Lombards"), Donna Brandt Lawrence, and Bessie Panos ("Panos"). I directed a verdict in favor of Sovereign Bank on some claims, and the jury rendered a verdict in favor of Sovereign on the remaining ones. Verdict Slip (document #396). I then reviewed the evidence presented at trial and found that the jury's verdict was mistaken as to the plaintiffs' claims for conversion, and I granted a new trial on those claims only. Order Pl.'s Mot. J. or New Trial (document # 476).

Meanwhile, the intervenor-plaintiffs had moved to intervene, and I had granted their motion on December 1, 2008. I denied Sovereign's Motion to Dismiss the Intervenors' Second Amended Complaint on July 28, 2010. Mem. & Order (document #514). The original plaintiffs' new trial was consolidated with the intervenors' trial, which is now scheduled for June 6, 2011.

The parties have again moved for summary judgment. See Pl.'s Mot. Partial Summ. J. (document # 575); Def. Mot. Summ. J. (document #579). As I will explain briefly below, after a hearing, Sovereign's Motion for Summary Judgment is GRANTED as to Count I (aiding and

abetting breach of fiduciary duty) and Count III (negligence for breaching a duty to APAM); DENIED as to Count III (negligence for breaching duty to intervenor-plaintiffs); DENIED as to Counts II and IV (conversion / breach of trust); and RESERVED as to Count V (93A). The Plaintiff-Intervenors' Motion for Partial Summary Judgment is DENIED.

And after all of this litigation -- including at least five written opinions -- there is little left to discuss. This opinion, however perfunctory, seeks to provide further guidance to the parties regarding the legal issues still in dispute and the legal framework within which the case will be tried.

## I.    STANDARD

A court will grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts must be considered in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); Mariasch v. Gillette Co., 521 F.3d 68, 70 (1st Cir. 2008). The summary judgment standard is the same when the parties have filed cross-motions for summary judgment. Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005).

## II.   DISCUSSION

The intervenor-plaintiffs' claims boil down to four causes of action: (1) aiding and abetting breach of fiduciary duty (Count I); (2) conversion / breach of trust (Counts II and VI); (3) negligence (Counts III and IV); and (4) breach of 93A (Count VI). I will briefly consider each.

### A.    Aiding and abetting breach fiduciary duty (Count I)

Count I asserts that Sovereign aided and abetted Bleidt's breach of his fiduciary duty to the plaintiffs. The Supreme Judicial Court has outlined three elements for a claim of aiding and abetting a breach of fiduciary duty:

(1) there must be a breach of fiduciary duty,
(2) the defendant must know of the breach, and
(3) the defendant must actively participate or substantially assist in or encourage the breach to the degree that he or she could not reasonably have acted in good faith.

Arcadi v. NAGE, Inc., 447 Mass. 616, 623-24 (2006). I find that the claim fails on the third prong. Active participation requires more than mere negligence. While Sovereign likely knew of the fiduciary duty and the breach, there is little evidence Sovereign *actively participated* in the breach of fiduciary duty. See Electronic Order, Jan. 7, 2009 ("[Plaintiffs] have not shown that Sovereign had any active role in Bleidt's misappropriation of investor funds."). Indeed, I directed verdict on this claim at the earlier trial. While I have explained, the intervenor-plaintiffs are not bound by the Court's earlier rulings or the jury's verdict at trial, see Electronic Order, Nov. 25, 2009, to the extent that the parties bring no new evidence or argument on any given claim, I will likely reach the same conclusion. Summary judgment is therefore GRANTED to Sovereign on the aiding and abetting claim.

### B. Conversion / Breach of Trust (Counts II and VI)

Both parties move for summary judgment as to the conversion or breach of trust claims. The thrust of these claims is simple: the intervenor-plaintiffs gave checks to Bleidt to invest on their behalf, and Sovereign allowed him to deposit those checks into the '545 account. To the extent that Sovereign knew that Bleidt was breaching his fiduciary duty to the plaintiff-intervenors by depositing these checks, Sovereign is liable for conversion or breach of trust.

There are, however, abundant triable questions of fact as to these claims. The extent of Sovereign's knowledge of a breach of fiduciary duty or trust -- and its liability under the UCC or common law -- depends on the *type* of check deposited, including who wrote the check (the drawer) and to whom the check was addressed (the drawee).

I have previously outlined the law on conversion in the Order for New Trial at 7-8 (document #476). In the first case, however, the types of checks presented by the four plaintiffs were limited to third-party checks made payable to the plaintiffs. The framework for the intervenors' case will be broader, to encompass the additional types of checks at issue here. The key question as to each check -- whatever type -- will be whether Sovereign knew that it was deposited in a breach of fiduciary duty to the plaintiff-intervenor.

As a general rule, to prove conversion, the plaintiffs must show that Sovereign intentionally exercised control over property to which it had no right. The conversion of negotiable instruments is governed by Mass. Gen. Laws ch. 106 § 3-420(a), or Article III of the UCC, which provides:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (I) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

In this case, the plaintiffs, or intervenor-plaintiffs, claim that they gave checks to Bleidt as a fiduciary to invest on their behalf.[2] Instead, he converted the checks and deposited them into the '545 account for his own benefit. They are entitled to recover the proceeds resulting from the checks' negotiation to Sovereign. Sovereign is responsible for returning these funds unless it is determined to be a holder in due course. See Mass. Gen. Laws ch. § 3-306 ("A person taking an instrument, *other than a person having rights of a holder in due course*, is subject to a claim of a property or possessory right in the instrument or its proceeds . . . .") (emphasis added).

Sovereign has always claimed that it is a holder in due course, or one who "took the instrument (I) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in subsection (a) of section 3-305." Mass. Gen. Laws ch. 106 § 3-302. As This case is based on (v): Sovereign cannot be the holder in due course *if it took the checks with notice of the plaintiffs' claim that Bleidt breached his fiduciary duties*.

The plaintiff must therefore prove that Sovereign had *notice* of the plaintiffs' claims to the checks and notice that Bleidt had breached his fiduciary duties. Mass. Gen. Laws ch. 106 §

---

[2] The defendant's argument that there was no wrongful dominion in this case *as a matter of law* because checks were made payable to APAM is unavailing. As I explained in the Order on the Motion to Dismiss, the plaintiffs will have to prove their interest in the checks at trial; their task should be simple as to most checks. Order on Mot. Dismiss at 6 (document #514). They will of course have a higher burden to show wrongful dominion of those checks that do not indicate their interest on their face.

3-307 provides guidance about notice of a breach of fiduciary duty. This section is *descriptive*; it is not a cause of action in and of itself. It provides:

> (a) In this section:
>
> > (1) "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.
> >
> > (2) "Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.
>
> (b) If (I) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:
>
> > (1) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.
> >
> > (2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (I) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.
> >
> > (3) If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.
> >
> > (4) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (I) taken in payment of or as security for a debt known by the taker to be

>the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

Mass. Gen. Laws ch. 106 § 3-307.

I quote this section in its entirety because its provisions must be read together. It recognizes that a plaintiff's burden of proof will depend on the type of check at issue. Consider, for instance, a check that is made payable to a fiduciary, *as a fiduciary* (such as "to APAM for the benefit of Smith"). It is clear on the face of the check that there is a fiduciary relationship, and therefore the bank's knowledge of a fiduciary relationship will be imputed. Section 3-307(b)(2) provides that the taker has notice of the breach *as a matter of law* if that check is deposited into an account that is not a fiduciary account. Contrary to Sovereign's assertion, however, § 3-307(b)(2) is not exclusive; it does not prohibit a claim based on a check where the fiduciary relationship is not clear on its face. In contrast, where a check is made payable to APAM or Bleidt directly, the intervenor-plaintiffs will have to prove that the check was deposited into a non-fiduciary account and that someone conducting the transaction knew of the fiduciary relationship and knew that this instrument was written to Bleidt or APAM in their fiduciary capacity (even if it did not say so on its face).[3] To be sure, the plaintiff-intervenors have a heavier burden as to these checks.

---

[3] The question of whether the *clerk* must have known of the breach of fiduciary duty is best left for trial. At trial, the plaintiffs will have to prove once again that "someone conducting the transaction" knew of the breach of fiduciary duty. See Mass. Gen. Laws ch. 106 § 1-201(27) (stating that knowledge of the organization is determined by the "individual conducting the transaction"); § Mem. & Order Summ. J. at 6 (document #329). As Sovereign indicated at the hearing, it is a triable question of fact as to whether Magrath was involved in the deposit of these checks, including the third-party checks at issue in the first trial. The parties will have the opportunity to present bank policies and practice again, and let the jury determine the extent of his involvement.

With respect to checks that the plaintiff-intervenors issued and made payable to APAM or to Bleidt personally. As to these checks, § 3-307(b)(3) provides that "If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty." Again, this provision makes practical sense in this case. If an intervenor-plaintiff wrote a check directly to APAM, a clerk -- or person conducting the deposit -- will not be on notice of any breach of fiduciary duty if he does not know that there is a relationship or that that relationship has been breached. Here, an intervenor-plaintiff must produce evidence to suggest that Sovereign knew of the breach of fiduciary duty. Where, for example, a plaintiff-intervenor *endorsed* a check to APAM or Bleidt, a jury may consider the endorsement itself to be evidence of a fiduciary relationship.[4]

There remains a legal question as to the appropriate cause of action for checks that were issued by or endorsed by the plaintiff-intervenors to APAM or Bleidt. Section 3-307(b)(3) assumes that plaintiffs have a claim as to these instruments. And yet the conversion statute, Mass. Gen. Laws ch. 106 § 3-420(a), explicitly prohibits the issuer of a check from bringing a claim for conversion. I have previously reserved ruling on this question.[5] I hold now that the intervenors may not proceed on a conversion theory as to those checks that they themselves

---

[4] At this stage, without the presentation of evidence beyond the checks themselves, I tend to agree with Sovereign that checks endorsed by the intervenor-plaintiffs to APAM or Bleidt are in the same category as checks issued by the intervenor-plaintiffs.

[5] In the Order on the Motion to Dismiss, I said, "To be sure, it is not entirely clear what cause of action the framers of section 3-307 envisioned a potential plaintiff bringing when an instrument is taken with notice of a fiduciary breach . . . What is clear, however is that the section contemplates a drawer of a check being able to assert *some* claim against a depository bank if the requirements of either section 3-307(b)(3) or 3-307(b)(4) are met." Mem. & Order, at 5 (document #514).

issued or endorsed to APAM or Bleidt. The intervenors may, however, proceed on a breach of trust theory on these checks.[6]

In sum, the various types of checks represent a continuum. At one end are the checks where the fiduciary relationship is clear on the face of the check. On the other end are the checks that give no indication of any relationship at all. Sovereign will be liable for conversion or breach of trust only as to those checks that were deposited with their knowledge -- or the knowledge of someone conducting the transaction -- of a breach of fiduciary duty. Because there are triable questions of fact as to their knowledge of the breach of fiduciary duty regarding the various types of checks, summary judgment is DENIED to both the intervenor-plaintiffs and to Sovereign as to the conversion / breach of trust claims (Counts II and VI).

### C.  Negligence (Counts III and IV)

The intervenor-plaintiffs bring two claims of negligence against Sovereign. First, Count III alleges that Sovereign owed a duty of due care to its customer, APAM, to take reasonable steps to ensure that Bleidt did not make unauthorized withdrawals from the '545 account. This count fails as a matter of law because it alleges a breach of duty to APAM, rather than to the intervenor-plaintiffs. A plaintiff cannot prevail on a negligence claim based on a duty of care to

---

[6] The intervenor-plaintiffs' claim for breach of trust relies on section 324 of the Restatement (Second) of Trusts. I did not permit the original plaintiffs to proceed on this theory because they first cited the section in a November 2008 reply in support of their motion for partial summary judgment. (Order & Mem. on Mots. for Summ. J. 4, document #329.) I hold now that the *intervenors* may proceed on breach of trust.

Sovereign argues that section 324 of the Restatement (Second) of Trusts does not provide a cognizable cause of action. Of course § 324 does not itself give rise to a cause of action. The cause of action is breach of trust at common law. The restatement merely summarizes the common elements and provides a definition; it is a *restatement* of the common law.

Sovereign's argument that breach of trust does not apply because there is no trust account is similarly unavailing. The intervenor-plaintiffs claims are based on the fact that the account was *not* a trust account or a fiduciary account, but that it was *used* as such. They allege that the Bank knew that trust funds were being deposited into a non-trust account, with knowledge that those deposits represented a breach of trust.

a separate entity.  McCloskey v. Mueller, 446 F.3d 262, 268 (1st Cir. 2006) ("In Massachusetts, a tort plaintiff must show that . . . the defendant owed him a duty of care.") (internal quotations omitted).  Accordingly, summary judgment is GRANTED to Sovereign on Count III.

Second, Count IV alleges that Sovereign negligently engaged in conduct that permitted Bleidt to shield his fraud from the scrutiny of the SEC and thereby breached its duty of care to the intervenor-plaintiffs.  Sovereign moves for summary judgment on the grounds that it owed no duty to the intervenor-plaintiffs because the account that was used to perpetrate the fraud in this case was not a trust or fiduciary account.

As a general rule, a bank owes no duty to non-customers.  There is however a narrow exception to this rule: a bank has a duty to investigate signs of fraud -- such as consistent overdrafts -- in a fiduciary account.  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 287-88 (2d Cir. 2006); Go-Best Assets Limited v. Citizens Bank of Mass., 2011 WL 1783116, at *4 (Mass. App. Ct. May 12, 2011).  The account in question need not be *labeled* a fiduciary account.  It is sufficient that the bank knew that it was used as such.  Lerner, 459 F.3d at 281 n. 2 (noting that it is irrelevant whether or not the accounts used in a fraud were properly designated as fiduciary accounts so long as the bank had actual knowledge that they were intended to be trust accounts for client funds); Go-Best, 2011 WL 1783116, at *6 (defining a trust account as one in which trust funds are deposited and holding that there was a triable question of fact as to whether the defendant *knew* that it was used as a trust account).

In this case, there is at least a triable question of fact as to whether Sovereign knew that trust funds were being deposited into the '545 account and that Bleidt was using that account as a fiduciary account.  Summary judgment is therefore DENIED to Sovereign on Count IV.

    **D.**    **93A (Count V)**

Finally, the intervenor-plaintiffs bring a claim for unfair and deceptive business practices under Mass. Gen. Laws ch. 93A. I will RESERVE judgment on these claims at this stage.

**III.**    **CONCLUSION**

For the foregoing reasons, the Court **ORDERS** as follows:

1. Intervenor-Plaintiffs' Motion for Partial Summary Judgment (**document # 575**) is **DENIED** in its entirety.

2. Defendant's Motion for Summary Judgment (**document #579**) is **GRANTED in part, DENIED in part, and RESERVED in part**. It is granted as to the claims for aiding and abetting breach of fiduciary duty and negligence for breaching a duty to APAM. It is denied as to negligence for breaching duty to intervenor-plaintiffs and conversion / breach of trust. It is reserved as to the ch. 93A claims.

**SO ORDERED.**

**Date:** May 27, 2011        */s/ Nancy Gertner*
                                      **NANCY GERTNER, U.S.D.J.**