UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID J. FINE, in his capacity as Court-Appointed Ancillary Receiver of Bradford C. Bleidt and Allocation Plus Asset Management Company, Inc., et al., <br><br> Plaintiffs, <br><br> JOEL ABRAMSON, et al., <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> SOVEREIGN BANK, <br><br> Defendant. | Civil Action No. 06-11450-NG |

DRAFT PROPOSED JURY INSTRUCTIONS
FOR INTERVENORS/PLAINTIFFS

I. INSTRUCTION ON CONVERSION CLAIM

To prove conversion, the intervenor-plaintiffs must show that Sovereign deposited checks belonging to them with notice that the specific transactions constituted a breach of Bleidt's fiduciary duty to those plaintiffs. For Sovereign to have had such notice with respect to a given check deposited into the APAM business account or another Bleidt-controlled account, the intervenor-plaintiffs must prove that: (a) a check entrusted to Bleidt in his fiduciary capacity for the benefit of an intervenor-plaintiff was deposited into a non-fiduciary account (e.g., the APAM account); and (b) the bank employee(s) involved in conducting the relevant transaction knew of

1

the fiduciary relationship that Bleidt and APAM had with APAM's clients and knew that the check was payable to or received by Bleidt in his fiduciary capacity.

A plaintiff's burden of proof will depend on the type of check at issue in the specific transaction. For instance, with respect to a check that is made payable to a fiduciary (such as "to APAM for the benefit of Smith"), it is clear on the face of the check that there is a fiduciary relationship, and therefore the bank's knowledge of a fiduciary relationship will be imputed and the bank will have notice of Bleidt's breach of fiduciary duty if it deposits that check into an account that is not a fiduciary account. By contrast, where a claim is based on a check for which the fiduciary relationship is not clear on its face – such as a check that is made payable to APAM or Bleidt directly – the intervenor-plaintiff will have to prove that the check was deposited into a non-fiduciary account and that someone conducting the transaction knew that Bleidt and APAM had a fiduciary relationship with APAM's clients and knew that this instrument was written to Bleidt or APAM in their fiduciary capacity (even if it did not say so on its face).

With respect to the issue of what constitutes knowledge, a Sovereign bank employee involved in conducting the specific checking transaction and depositing a check into a non-fiduciary account is charged with knowledge of facts indicative of both Bleidt's or APAM's fiduciary status and of the fiduciary nature of the transaction insofar as: (a) that bank employee was personally aware of those facts; or (b) the employee would have been informed of those facts had he or she communicated with the branch manager or the manager's designee as required by Sovereign's own policies and procedures during the relevant period defining the due diligence required to be undertaken prior to accepting certain checks for deposit with the bank.

In particular, to the extent that Sovereign's policies and procedures at all relevant times called for each third-party check – including any check endorsed by the original payee (here, an

APAM client) and then transferred or endorsed over to a third-party like Bleidt or APAM for deposit into an account not owned by the original payee/endorser to be personally reviewed and approved by Causeway Street branch manager David Magrath prior to being deposited by a teller or other branch employee, due diligence would have required any teller presented with such a check for deposit to a non-fiduciary account to obtain Magrath's prior approval.  Because Magrath was supposed to be involved in approving each of these transactions as part of the due diligence defined in Sovereign's policies and procedures, whether Sovereign had notice of Bleidt's breach of fiduciary duty must be judged based on Magrath's own knowledge of Bleidt's and APAM's fiduciary status and on what he gleaned or would have gleaned from the face of the check as to whether that check was transferred or written to Bleidt or APAM in their fiduciary capacity.

Under the law, an action for conversion of a check or other negotiable instrument may not be brought by (1) the issuer or acceptor of the instrument, or (2) a payee or indorsee who did not receive delivery of the instrument either directly or indirectly (through an agent), because such persons lack a sufficient legal right to or interest in the instrument to assert that it was wrongfully taken by Sovereign.  However, such persons may still recover for losses they sustained as a result of Sovereign's acceptance of the deposit or withdrawal of funds entrusted to Bleidt for use on their behalf if they can prove that the bank acted with notice of his commission of a breach of trust (see the "Instruction on Claim for Participation in Breach of Trust" below). (See M.G.L. c. 106, § 3-307; M.G.L. c. 106, § 1-201(27); Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc., 470 F.3d 14 (1st Cir. 2006).)

## II.  INSTRUCTION ON CLAIM FOR PARTICIPATING IN BREACH OF TRUST

A bank that permits a fiduciary to deposit or withdraw trust funds – that is, funds that the bank knows or should know are held in a fiduciary capacity for the benefit of another party – with notice that the fiduciary is committing or intends to commit a breach of trust by misusing those funds is liable as a participant in that breach.  In this case, Sovereign is alleged to have participated in Bleidt's breach of trust in misusing APAM client investment funds entrusted to him insofar as the bank: (1) improperly accepted trust funds for deposit with notice of a breach of trust; and (2) improperly allowed withdrawals of trust funds with notice of a breach of trust.

A bank is deemed to have notice of a breach of trust where it has knowledge of circumstances indicating that a fiduciary is applying or intends to apply trust funds to the personal benefit of the fiduciary or of a third party other than the intended beneficiary of those funds.  Thus, a bank is liable for participating in a breach of trust where it accepts what it knows or should know are trust funds for deposit to a non-trust account (including the fiduciary's personal account or the account of a third party other than the intended beneficiary) with knowledge of circumstances indicating that the fiduciary is or will be using the funds for a non-trust purpose – that is, a purpose unrelated to the investment or management of money on behalf of the beneficiary – such as payment of a personal expense or debt of the fiduciary or of a third party other than the beneficiary.  Likewise, where a fiduciary draws a check either in his own favor or in favor of a third party on an account that is labeled as a trust account that, while titled in the fiduciary's name without a trust label, is or should be known by the bank to contain trust funds (as is alleged in the case of the APAM account), the bank will be a participant in a breach of trust if it allows the withdrawal despite having knowledge of circumstances indicating that the fiduciary is using or intends to use trust funds deposited with the bank for a non-trust purpose.

(See Restatement (Second) of Trusts § 324; Scott and Ascher on Trusts (5th ed. 2008); Bogert's Trusts and Trustees, ch. 43 (Participation in a Breach of Trust), § 908 (Bank's liability for honoring checks on trust account in favor of third persons); M.G.L. c. 106, § 3-307.)

### III. INSTRUCTION ON NEGLIGENCE CLAIM

As a general principle of law, every person has a duty to exercise reasonable care to avoid harming others. A duty of care is imposed when the risk of harm is recognizable or foreseeable to the actor. Consequently, with some important exceptions, a defendant owes a duty of care to all persons who may be foreseeably injured by the defendant's failure to exercise reasonable care (such as in a bank's handling of a third party's funds deposited with that bank).

With respect to those intervenors who were also Sovereign's customers during the relevant period, the bank is liable for any losses to them sustained as a result of Bleidt's fraud to the extent the bank failed to exercise reasonable diligence in light of information available to it within the ordinary channels of its business to prevent or avoid approving account activities or transactions that would exceed the scope of authority granted to Bleidt as that customer's agent. In particular, Sovereign is liable to the extent it had notice that an agent like Bleidt with no express limitations on his authority was using customer funds for his own personal benefit and thereby misappropriating them. For example, the bank was required to take reasonable steps to ensure that checks on which those customers were designated as the payee or issuer or checks that were drawn on an outside account on which the bank's customer was identified in the title as the beneficiary were properly credited to the customer's account or to a trust account established for that customer's benefit to the extent Sovereign knew or should have known on the basis of facts readily accessible to it relating to the nature of each relevant checking transaction that the

funds at issue belonged to or were intended to be used on behalf of that customer as opposed to deposited or withdrawn for the personal use of the customer's agent or of any other third party.

With respect to those intervenors who were not customers of the bank, Sovereign had a duty of reasonable care, owed to its customers/depositors, in opening and handling their accounts, which included a duty to take reasonable steps to understand and follow the instructions of its customers on account opening, to be alert to suspicious circumstances and fraud in opening and operating accounts, and to prevent fraudulent or unauthorized transfers from those accounts.  Where a bank breaches its duty of reasonable care with respect to the opening and handling of an account – such as by failing to take reasonable steps to prevent Bleidt in his capacity as APAM's agent/fiduciary from engaging in unauthorized transfers of funds deposited on APAM's behalf into the account for the benefit of APAM's clients – the bank may be held liable in negligence to everyone (including both a customer like APAM as well as non-customers like the investor-client plaintiffs) foreseeably harmed by that breach.  It is reasonably foreseeable as a matter of law that the class of persons who would be harmed by Sovereign's failure to exercise due care in the oversight and handling of the account of a known investment adviser that the bank is or should be aware contains funds belonging to that investment adviser's clients would encompass clients of a customer known to be an investment adviser/asset manager who entrusted their funds to that customer for investment on their behalf).

This jury may determine whether Sovereign committed a breach of duties it owed to exercise reasonable care in the opening and handling of the APAM account in light of the evidence presented of certain "red flags" that should have allegedly put the bank on notice that some improprieties were taking place, as well as evidence of certain banking practices in connection with the APAM account that were allegedly not commercially reasonable and that

enabled Bleidt to perpetrate his fraud. Such "red flags" and banking practices included Bleidt's designation as a co-holder on the APAM business account with the right to access the funds deposited therein for his personal use (as opposed to as a mere signatory on the account pursuant to a corporate banking resolution), the according to Bleidt of customer status in the bank's approval of his transactions involving the APAM account, the bank's acceding to his request to have account statements sent solely to his home address, and the permitting of checks written or endorsed to APAM to be deposited by him into an account belonging to another Bleidt company.

In order to find liability, the jury must conclude not only that Sovereign breached its duties to one or more intervenors, but that the breach was a proximate cause of (that is, actually contributed to) the losses sustained by the intervenors-plaintiffs by, for example, enabling Bleidt to continue to perpetrate his fraudulent scheme and/or conceal his wrongdoing from government regulators, other APAM officers or employees, and outside auditors of APAM's account statements and other records. To the extent the jury finds that Sovereign's negligence was a proximate cause of losses sustained by intervenors, the jury may consider whether these damages should be reduced based on any proven acts of negligence by the intervenors themselves that may have proximately contributed to their own losses. However, any negligence by an intervenor that is only shown to have been a mere factor in his or her injury but that is too remote or incidental to be a contributing cause to that injury cannot be used to diminish Sovereign's liability for its own negligence found to have contributed to the cause of the intervenors' losses. (See, e.g., Coombes v. Florio, 450 Mass. 182, 187 (2007) (citation omitted); Grabowski v. Bank of Boston, 997 F. Supp. 111, 126-28 (D. Mass. 1997); Restatement of Agency, § 166 ("Third Persons Having Notice of Limitation of Authority"); Kawasaki Motors Finance Corp. v. J.P. Chase Morgan Bank, N.A., 2011 WL 1212217, *6-*7 (D. Ariz. Mar. 30, 2011); Lerner v. Fleet

Bank, N.A., 459 F.3d 273, 294-95 (2d Cir. 2006); Norfolk Southern Ry. v. Sorrell, 127 S. Ct. 799, 805-06 (2007); Dean v. Leonard, 83 N.E.2d 443, 444 (Mass. 1949).)

Dated:   June 6, 2011

Respectfully submitted,

| | |
|---|---|
| ___/s/ Melanie L. Oxhorn_____ | ___/s/ David J. Fine_____ |
| Melanie L. Oxhorn, BBO No. 145458 | David J. Fine, BBO No. 165120 |
| 450 E. 63rd St., #6C | Law Offices of David J. Fine |
| New York, NY 10065 | 1 State Street, Suite 1500 |
| (212) 593-0172 | Boston, MA 02109 |
| | (617) 720-2942 |

Attorneys for Plaintiffs

Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  June 6, 2011

/s/ David J. Fine_____
David J. Fine, BBO No. 165120